**ERIC E. NELSON**
**Special Assistant U.S. Attorney**
**BRYAN R. WHITTAKER**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**901 Front Street, Suite 1100**
**Helena, MT 59626**
**Phone: (406) 457-5120**
**FAX: (406) 457-5130**
**Email: Nelson.Eric@epa.gov**
**Bryan.Whittaker@usdoj.gov**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 15-07-H-DWM** |
| **Plaintiff,** | |
| **vs.** | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT** |
| **JOSEPH DAVID ROBERTSON,** | |
| **Defendant.** | |

Special Assistant United States Attorney Eric E. Nelson and Assistant

United States Attorney Bryan R. Whittaker hereby file the United States' Response

in Opposition to Defendant's Motion to Dismiss the Indictment.

## I. Robertson's claim that the state information deals with the same subject matter—and should be viewed as precluding the charges brought in the federal indictment—is without merit.

The introduction to the Defendant's Motion to Dismiss incorrectly asserts that the federal indictment and the dismissed state criminal trespass and criminal mischief information are "dealing with the same subject matter."

The federal indictment addresses conduct beyond the conduct at issue in the dismissed state charges. While Count III of the federal indictment does relate to conduct occurring on the Manhattan Lode property (the same property at issue in the dismissed state information), Counts I and II of the federal indictment relate to conduct occurring on a separate property, namely National Forest System Lands.

With respect to Count III of the federal indictment, the subject matter of the charges is legally distinct. The federal indictment alleges violation of the federal Clean Water Act, 33 U.S.C. § 1251 *et. seq.*, while the state charges allege violations of Montana state criminal mischief and trespass charges under Mont. Code. Ann. §§ 45-6-101(1)(a) and 45-6-203(1)(b). While the basis for these separate federal and state charges may rely on certain overlapping facts, the elements of the offenses and the sovereigns responsible for prosecuting those violations are entirely separate. Accordingly, the defendant's suggestion that the dismissed state charges would have resolved the federal interest in enforcing criminal violations of the Clean Water Act is misplaced.

Robertson further notes in the introduction to his motion that the Clean Water Act does not preempt a state from enacting and enforcing its own water protection statutes, 33 U.S.C. § 1370.  Df. Mot. at 1-2.  However, the Clean Water Act expressly reserves federal authority to enforce violations of the requirement to obtain a permit to discharge dredged and fill material into waters of the United States under Section 404 of the Act, even in states where EPA has authorized a state to administer the 404 permitting program.  *See* 33 U.S.C. §§ 1344, 1344(n):

"**Enforcement authority not limited** – Nothing in this section shall be construed to limit the authority of the [EPA] Administrator to take action pursuant to section 1319 of this Title."  (emphasis original).  S*ee also, Michigan Peat v. United States Environmental Protection Agency*, 175 F.3d 422, 424 (describing statutory background of the Clean Water Act 404 program, and noting reservation of federal enforcement authority even in the only two states – Michigan and New Jersey – that have been approved to operate the Section 404 scheme).

Here, the EPA has not delegated Section 404 permitting authority to the State of Montana.  Even if it had, or even if the state criminal mischief and trespass charges could somehow be viewed as an effort to enforce Montana state water protection statutes, such delegation would not preclude the federal enforcement action charged in Count III of the indictment, because 33 U.S.C. § 1344(n)

3

expressly preserves federal authority to independently enforce violations of Section 404.

## II.  Defendant's Double Jeopardy Claims Have No Merit.

Robertson argues the indictment should be dismissed based on Double Jeopardy grounds.  He is wrong.  The state offenses are different from the crimes charged in the indictment in this case.  Furthermore, jeopardy did not attach to the state charges.  But even if jeopardy had attached and the crimes were identical, the Double Jeopardy clause does not prohibit the federal government as a separate sovereign from prosecuting Robertson.

### a.  The state and federal offense are different.

The Double Jeopardy Clause affords the defendant no protection here because the state crimes were totally different offenses.  The Fifth Amendment's Double Jeopardy Clause provides: "[N]or shall any person be subject for the <u>same offense</u> to be twice put in jeopardy of life or limb."  U.S. Const. amend. V (emphasis added).  This has been interpreted to protect persons "against successive prosecutions for the <u>same offense</u> after acquittal or conviction and," "against multiple criminal punishments for the same offense."  *Monge v. California*, 524 U.S. 721, 727–28 (1998).  Generally stated, "[w]hen a defendant has violated two different criminal statutes, the double jeopardy prohibition is implicated when both

statutes prohibit the same offense or when one offense is a lesser included offense of the other." *United States v. Overton*, 573 F.3d 679, 690 (9th Cir. 2009).

As a factual matter, the state had no authority to charge and vindicate any criminal conduct for which the defendant is charged in the indictment. As to Count I, Robertson is charged with the Unauthorized Discharge of Pollutants into Waters of the United States which occurred on federal property—*i.e.*, National Forest Service Lands. In other words, the defendant constructed ponds on the National Forest and by so doing discharged pollutants into water of the United States. The federal property at issue, and federal jurisdiction over waters of the United States, demonstrate the unique federal interest in the crime charged in Count I of the indictment. The state charges had nothing to do with crimes relating to National Forest Service Land or waters of the United States. The state charges dealt with damage caused by Robertson to a private tract of land owned by Liane Taylor known as the Manhattan Lode. Ex. 1 (Information and Affidavit). The charges are legally and factually different.

As to Count II, Robertson is charged with Malicious Mishief - Injury/Depredation of Property of the United States. Count II again deals solely with Robertson's criminal conduct on federal property—*i.e.*, the National Forest Service Lands. The state case had nothing to do with lands belonging to the

federal government or any of Robertson's criminal conduct on those lands.   The

crime committed by Robertson in Count II is both legally and factually different.

As to Count III, Robertson is charged with the Unauthorized Discharge of

Pollutants into Waters of the United States which occurred on the Manhattan Lode

property owned by Liane Taylor.  The government acknowledges that Robertson's

criminal conduct occurred on the same private parcel of land that was at issue in

the state case, and involves some overlapping facts regarding the defendant's pond

construction activities.   But, the elements of the offense in Count III, and the

interest being vindicated, are different from the state charges.  The state charges

seek to protect the private land owner from trespass and criminal mischief.  The

Clean Water Act, on the other hand, was enacted to "restore and maintain the

chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. §

1251(a); *Michigan Peat*, 135 F.3d at 423.  The federal government has a unique

interest in vindicating and enforcing the requirements of the Clean Water Act.

Moreover, the Clean Water Act provides a separate criminal statutory

mechanism for protecting the waters of the United States, and the elements of this

offense are entirely different from the state charges of criminal mischief and

criminal trespass.  *See United States v. Davenport*, 519 F.3d 940, 943 (9th Cir.

2008) ("To determine whether two statutory provisions prohibit the same offense,

we must examine each provision to determine if it "requires proof of a[n

additional] fact which the other does not.") *citing Blockburger v. United States*, 284 U.S. 299, 304 (1932). The state charges have absolutely nothing to do with discharging pollutants, obtaining permits, or protecting a water of the United States. Thus, because the facts and the crimes are totally different as to all the counts in the indictment, there can be no Double Jeopardy claim.

### b. Jeopardy had not attached during the state proceedings.

Even if the state offenses were considered the same offenses, the Double Jeopardy Clause bars a second prosecution for the same offense only if jeopardy attached in the original proceeding. This means that a defendant must be facing a potential determination of guilt. In a jury trial, jeopardy attaches when the jury is impaneled and sworn. *United States v. Padilla*, 639 F.3d 892, 897 (9th Cir. 2011). Jeopardy does not attach when the state moves to dismiss the counts before the defendant's trial. *United States v. Sparks*, 87 F.3d 276, 279 (9th Cir. 1996). In *Sparks*, the defendant argued that he was exposed to double jeopardy by the federal prosecution following the state dismissal of similar charges. Robertson, like Sparks, was never tried on the state charges and "[t]his objection to the federal prosecution is a nonstarter." *Id.*; Def. Br. at 2 (acknowledging state charges against Robertson were dismissed prior to trial). Indeed, "[j]eopardy never attached in the state court because Sparks was never put to trial on the two counts which the state dismissed. The constitutional prohibition has no application." *Id.*

Accordingly, because jeopardy had not attached to the state case, there can be no double jeopardy claim in the federal case.

Finally, the state charges were expressly dismissed "without prejudice" by the state district court upon the motion of the state. *See* Ex. 2 (state motion to dismiss without prejudice and district court order granting motion). Accordingly, prejudice has not even attached to the state charges, let alone the separate federal indictment. While defendant asserts that the state case should have been dismissed with prejudice, he provides no basis for the assertion. The state's motion and the district court's order speak for themselves. *Id.*

> **c. The Double Jeopardy Clause does not prohibit the federal government, as a separate sovereign from the state, from prosecuting the defendant.**

Even if jeopardy had attached in the state case, the defendant cannot show that the successive federal prosecution offends the Double Jeopardy clause. Indeed, "[f]ew double jeopardy claims based on successive state and federal prosecutions are 'colorable' under this definition because, as a general rule, an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each without offending the Double Jeopardy Clause." *United States v. Zone*, 403 F.3d 1101, 1104 (9th Cir. 2005) *citing United States v. Lanza*, 260 U.S. 377, 382 (1922); *see also Heath v. Alabama*, 474 U.S. 82, 89 (1985) ("[T]he [Supreme] Court has uniformly held that

the States are separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own 'inherent sovereignty,' not from the Federal Government.").

Robertson cites *Zone* in an attempt to rely upon a narrow exception created in *Bartkus v. Illinois*, 359 U.S. 121, 123 (1959), for cases where federal authorities commandeer a state's prosecutorial machinery. *Zone*, 403 F.3d at 1104. But, "[a]s *Bartkus* makes plain, there may be very close coordination in the prosecutions, in the employment of agents of one sovereign to help the other sovereign in its prosecution, and in the timing of the court proceedings so that the maximum assistance is mutually rendered by the sovereigns." *United States v. Figueroa-Soto*, 938 F.2d 1015, 1020 (9th Cir. 1991). Indeed, "[n]one of this close collaboration amounts to one government being the other's 'tool' or providing a 'sham' or 'cover.' Collaboration between state and federal authorities is the conventional practice. No constitutional barrier exists to this norm of cooperative effort." *Id.* The Ninth Circuit affirmed the district court's finding that Figueroa's motion to dismiss based upon such facts of close coordination was frivolous and dilatory. *Id.*

The party moving for dismissal has the burden to tender sufficient evidence to establish a prima facie double jeopardy claim. *Zone*, 403 F.3d at 1105 *citing United States v. Guzman*, 85 F.3d 823, 827 (1st Cir. 1996) (holding that a

defendant "must produce some evidence tending to prove that . . . one sovereign was a pawn of the other, with the result that the notion of two supposedly independent prosecutions is merely a sham."). Robertson makes no such prima facie showing here. Instead, he claims his case is like *Zone*, and makes nothing more than a conclusory statement that the state prosecution was so thoroughly dominated by federal authorities that state prosecutors exercised no independent volition. Df. Br. at 3. The government agrees with the defendant that his case is in fact like *Zone*, where Zone did not satisfy his preliminary evidentiary burden and therefore the district court's denial of his motion to dismiss was affirmed on appeal. *Zone*, 403 F.3d at 1107.

Thus, like *Zone*, this Court should deny Robertson's Motion because there are no facts to support his claim.

### III.    There have been no pre-indictment delay violations.

Paragraph (B) of defendant's motion, pp. 3-4, contains a claim of pre-indictment delay that prejudiced the defendant. But, the arguments in that section of the brief appear to be based upon (1) factual arguments that defendant asserts he could have raised in the state case had it gone to trial; and (2) an argument that defendant asserted a legal defense to the state charges (*i.e.*, Robertson's contested claim of ownership in the Manhattan Lode property) that would not be a basis for a defense to the federal Clean Water Act charges. Neither of these arguments are

related to a claim of pre-indictment delay that resulted in constitutional prejudice to the defendant with regard to the federal indictment.

Pursuant to *United States v. Lovasco*, 431 U.S. 783 (1977), the Ninth Circuit utilizes a two-pronged test to determine whether a pre-indictment delay has risen to the level of a denial of due process. *United States v. Moran*, 759 F.2d 777, 780 (9th Cir. 1985), *cert. denied*, 474 U.S. 1102 (1986). Under the first prong, the defendant has the burden of proving that "actual prejudice" occurred from the delay. *Id.* If "actual prejudice" is established, the court then weighs the length of the pre-indictment delay against the reason for the delay. *Id.*; *United States v. Gonzalez-Sandoval*, 894 F.2d 1043, 1050-51 (9th Cir. 1990).

The defendant's burden is a heavy one: "the proof must be definite and not speculative, and the defendant must demonstrate how the loss of a witness and/or evidence is prejudicial to his case." *Moran*, 759 F.2d at 782; *United States v. Mays*, 549 F.2d 670, 677 (9th Cir. 1977). The weight of this burden reflects the conviction that the "the applicable statute of limitation . . . is . . . the primary guarantee against bringing overly stale criminal charges," because "these statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *United States v. Marion*, 404 U.S. 307, 322 (1971), quoting *United States v. Ewell*, 383 U.S. 116, 122 (1966). Here, the charged conduct at issue occurred in 2013 and

2014, and the indictment was brought in 2015, well within the five-year statute of limitations period applicable to the charged offenses.

Defendant first claims that, had the state case gone to trial, he was prepared to show that Ron Spoon, a Montana Fish Wildlife and Parks biologist, explained to the defendant that his pond construction activities were lawful. Df. Mot. at 3. This argument does not explain how any pre-indictment delay affects defendant's ability to introduce the same evidence in the federal proceeding. The government is prepared to contest the defendant's account of his interactions with Mr. Spoon, but that is a matter of factual dispute to be resolved at trial, rather than as a basis for a pre-trial motion to dismiss. *See* Fed. R. Crim. P. 12(b)(3), limiting pre-trial motions to motions "that can be determined without a trial on the merits." A motion to dismiss may be entertained by the court only if it turns on a question of law not committed to the jury. *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993). Defendant also argues that the owner of the Manhattan Lode property, Liane Taylor, was allegedly told that if she didn't cooperate and file a complaint against the defendant, she would be the party responsible for pollution caused by the ponds. Df. Mot. at 4. This argument, like the argument concerning Ron Spoon, is a fact-based argument that the government is prepared to contest, and is properly reserved for resolution at trial.

Defendant next claims that he has contested his ownership of the Manhattan Lode property, which, if established by resolution of a quiet title lawsuit he has filed, would constitute a defense to the state criminal mischief and trespass charges. Df. Mot. at 3-4. Defendant correctly notes that his ownership of the Manhattan Lode property would not be a defense to the Clean Water Act offense charged in Count III of the indictment. The Clean Water Act's permitting requirements under Section 404 of the Act, 13 U.S.C. § 1344, plainly apply to the discharge of dredged or fill material into "waters of the U.S." that are located on private property. *See*, *e.g.*, *Northern California River Watch v. Wilcox*, 633 F.3d 766, 770, n.4 (9th Cir. 2011): ". . . land either is or is not an 'adjacent wetland' and a private property owner must comply with the CWA's permitting requirements on adjacent wetlands regardless of whether they have been so designated by the Corps," *citing United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 139 (1985) (holding that the Corps acted reasonably when it defined "waters of the United States" to include "adjacent wetlands" and that the Corps could sue a developer who filled in adjacent wetlands on his own property without a permit). But the availability or non-availability of a legal defense based upon defendant's ownership of the Manhattan Lode property during the time period alleged in Count III is unrelated to any claim of pre-indictment delay. It is simply

a matter of the differing elements of the state property offenses versus the federal Clean Water Act offense.

In sum, defendant has not demonstrated any potential prejudice, let alone actual prejudice, resulting from any pre-indictment delay in bringing the federal indictment. The indictment was brought well within the applicable statute of limitations, and defendant's motion to dismiss for pre-indictment delay should be denied.

## IV. There have been no Speedy Trial violations.

In one short paragraph the defendant attempts to set forth a claim for "Denial of Speedy Trial," but it is not clear if he is arguing a violation of his Sixth Amendment Speedy Trial Right or a statutory violation under the Speedy Trial Act pursuant to 18 U.S.C. § 3161 *et. seq.* based upon alleged and unspecified collusion between state and federal prosecutors. Df. Br. at 4-5. The government therefore responds to both claims and demonstrates that neither claim is viable.

### a. The Sixth Amendment right to a speedy trial has not been violated.

Generally, statutes of limitations are the primary safeguards against prejudicial preaccusation delay. *United States v. Marion*, 404 U.S. 307, 322 (1971). Robertson cites both *Marion* and *Barker v. Wingo*, 407 U.S. 514 (1972),

arguing what appears to be a Constitutional speedy trial violation.[1] Df. Br. at 4.

But, the *Barker* test for constitutional speedy trial violations inquiry applies to

delays between "federal accusation" and trial. *See United States v. Valentine*, 783

F.2d 1413, 1417 (9th Cir.1986). "Federal accusation" means arrest, service of

summons, or indictment by federal authorities. *Id.* An arrest by state or local

authorities is not a "federal accusation" for the purposes of the Sixth Amendment.

*Id.* (arrest by state officials not federal accusation); *United States v. Romero*, 585

F.2d 391, 398 (9th Cir. 1978) (rejecting argument that an arrest on state charges

can activate the speedy trial right under the Sixth Amendment, but is not activated

until Federal accusation).

The United States Supreme Court established a four factor test to determine

whether the government violated this right: (1) "whether delay before trial was

uncommonly long," (2) "whether the government or the criminal defendant is more

to blame for that delay," (3) "whether, in due course, the defendant asserted his

right to a speedy trial," and (4) "whether he suffered prejudice because of the

---

[1] Defendant further cites *United States v. Alvarez-Sanchez*, 511 U.S. 350, 359-60 (1994) in support of his position for a Speedy Trial violation. *Alvarez-Sanchez*, however, can have no applicability to this case because it is grounded in an unconstitutional statute. *Alvarez-Sanchez* dealt with the suppression of a confession under 18 U.S.C. § 3501. But § 3501was held unconstitutional and can have no applicability to this case. *Dickerson v. United States*, 530 U.S. 428, 437 (2000) ("Congress may not legislatively supersede our decisions [*Miranda*] interpreting and applying the Constitution.").

delay." *Doggett v. United States*, 505 U.S. 647, 650 (1992); *Barker*, 407 U.S. at 530. "To trigger a speedy trial inquiry, an accused must show that the period between indictment and trial passes a threshold point of 'presumptively prejudicial' delay. If this threshold is not met, the court does not proceed with the *Barker* factors." *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993).

In this case, there has been no delay since federal accusation. The grand jury returned an indictment on May 22, 2015, and this Court then issued a summons for Robertson's appearance. Doc. Nums. 1 & 2. Robertson made his initial appearance on the indictment on June 17, 2015. Doc. Num. 9. Just twelve days later on June 29, 2015, Robertson filed his Motion to Dismiss claiming a Speedy Trial violation. There has been no violation.

Robertson attempts to bootstrap the state time of prosecution which was about a year (April 2014-April 2015), and claim that this constituted unreasonable delay. But an earlier arrest by "state officers is irrelevant to the issue…because that arrest was for alleged violation of [state], not federal, law." *United States v. Cordova*, 537 F.2d 1073, 1076 (9th Cir. 1976). Moreover, Robertson cannot "benefit from the coincidence that the state prosecution following the [state] arrest was for the same illegal activity as that involved in the federal prosecution." *Id.* Accordingly, Robertson cannot rely upon the time of the state prosecution in

bringing a Sixth Amendment claim and he cannot satisfy the threshold inquiry under *Barker* and *Doggett.*

Even if Robertson could show the required delay, he still cannot make the required showing of actual prejudice. "A defendant 'has a heavy burden to prove that a pre-indictment delay caused actual prejudice: the proof must be definite and not speculative;' 'bare allegations' will not suffice.'" *Acha v. United States*, 910 F.2d 28, 32 (1st Cir. 1990) *citing United States v. Valentine*, 783 F.2d 1413, 1416-17 (9th Cir.1986). "Traditionally, actual prejudice can be shown in three ways: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired." *United States v. Beamon*, 992 F.2d 1009, 1014 (9th Cir. 1993). Robertson makes no allegation of any of these factors.

For example, Robertson says nothing of any anxiety and concern sufficient to demonstrate actual prejudice. Indeed, to meet that element he must show something more than the "considerable anxiety [which] normally attends the initiation and pendency of criminal charges; hence only undue pressures are considered." *United States v. Casas*, 425 F.3d 23, 35 (1st Cir. 2005).

Furthermore, Robertson cannot show actual prejudice because he was not subject to pretrial incarceration during the state prosecution and is not incarcerated for the federal prosecution.

While Robertson does not allege any actual prejudice in his pleadings, he does claim that the dismissal of the state charges "<u>could have</u> negatively impacted the ensuing federal prosecution." Df. Br. at 5 (emphasis added). This is nothing more than speculative bare allegations not founded in fact or evidence and cannot carry his burden to show actual prejudice. *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) (holding that the "possibility of prejudice is not sufficient to support [defendant's] position that their speedy trial rights were violated.").

In a separate argument, the defendant seems to hint at a possible defense he desired to raise in the state prosecution. Df. Br. at 3. He claims that a Montana Fish, Wildlife and Parks biologist Ron Spoon had granted him permission to build the ponds.[2] Df. Br. at 3. Even assuming arguendo that this could be a defense, Robertson can raise that defense in the federal prosecution and thus he could not have suffered prejudice. *See, e.g.*, *United States v. Lam*, 251 F.3d 852, 860 (9th Cir.) (claim that 14 ½ month delay caused witnesses' memory lapses and loss of evidence insufficient to establish actual prejudice), *amended by* 262 F.3d 1033 (9th Cir. 2001); *United States v. Williams*, 782 F.2d 1462, 1466 (9th Cir. 1985) (holding

---

[2] The government notes that this will not be a defense for Robertson because should Mr. Spoon testify at a trial, it is anticipated that Spoon would deny he ever gave Robertson permission to build the ponds. Additionally, at a minimum, Mr. Spoon as a state employee would have no authority to grant Robertson permission to build ponds on the National Forest parcel of land as charged in Count I of the indictment.

that the death or disability of four potential defense witnesses was minimal and speculative and did not support a finding of actual prejudice). Robertson alleges nothing else to suggest the alleged delay caused actual prejudice to his defense in the federal case.

Lastly, Robertson has brought forward no evidence sufficient to show that he actually asserted his right to a speedy trial in the state case as required under the *Barker* test. Looking at the *Baker* factors together show that there has been no Constitutional Speedy Trial violation.

### b. There are no statutory Speedy Trial Act violations.

Under 18 U.S.C. § 3161(b) the government must indict a defendant within 30 days of his arrest. "Regardless of the degree of federal involvement in a state or tribal investigation and arrest, only a *federal* arrest will trigger the running of the time period set forth in 18 U.S.C. § 3161(b)." *United States v. Manuel*, 706 F.2d 908, 915 (9th Cir. 1983) (emphasis in original); *United States v. Adams*, 694 F.2d 200, 202 (9th Cir. 1982). Indeed, "the date of the defendant's state arrest does not initiate the federal prosecution for the purpose of his speedy trial right." *United States v. Soto*, 1 F.3d 920, 923 (9th Cir. 1993), *as amended* (Sept. 20, 1993). The rule, however, is not absolute. The "Speedy Trial Act time periods may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act." *United States v.*

*Benitez*, 34 F.3d 1489, 1493 (9th Cir. 1994). Though not entirely clear, it appears that Robertson attempts to avail himself of this narrow ruse exception by claiming improper collusion. *See* Df. Br. at 4. But, Robertson offers little support for his conclusory allegations.

Robertson's ruse argument fails. There was no collusion between state and federal officials with the sole purpose of evading the requirements of the Act. Robertson's Motion itself demonstrates the ambiguity about any collusion and evidences the speculative nature of his claim. Instead of bringing forth proof, he asks the Court to investigate the claim for him. Df. Mot. at 4. He says, "the Court should determine the nature and effect of the collaboration that went on between the State and the Federal government…." Df. Mot. at 4. But, "[a] finding of collusion requires proof of a deliberate intent to deprive a defendant of h[is] federal procedural rights. The mere suspicion of collusion is insufficient." *United States v. Michaud*, 268 F.3d 728, 735 (9th Cir. 2001). "The defendant has the burden to prove the existence of such actual collaboration. A bare suspicion that there was cooperation between the two agencies designed to deny fundamental rights is not sufficient." *Id.* at 734. Robertson makes no showing of collusion here and cannot do so because there was no collusion.

In support of his collusion assertion, Robertson claims that the "federal investigators were the spearhead for the investigation." Df. Br. at 4. But, "the fact

that federal authorities actively participate in an investigation does not mandate the application of the Speedy Trial Act." *Benitez*, 34 F.3d at 1493. Communication and even coordination between the state and federal prosecutors does not itself compel the conclusion that the federal prosecutors were using the state prosecution as a ruse. *United States v. Ortiz-Lopez*, 24 F.3d 53, 55 (9th Cir. 1994); *see also United States v. Orbino*, 981 F.2d 1035, 1036-37 (9th Cir.1992) ("fact that federal prosecutors 'kept a sharp eye' on civil immigration proceedings does not trigger Speedy Trial clock").

In this case, the state prosecutor did rely upon information gathered during U.S. Forest Service Special Agent Jackie Fisher's investigation to support the state's probable cause affidavit and charging information. Ex. 1. But active investigation by federal authorities does not rise to a violation of the Act through improper collusion. *United States v. Johnson*, 953 F.2d 1167, 1172 (9th Cir. 1992); *see also Manuel*, 706 F.2d at 915-16 (FBI involvement in the investigation and questioning of defendant did not trigger the Act, and federal indictment four months after tribal arrest was permitted). Such evidence of cooperation is not sufficient to show that "officials conspired to evade the 30 day limit." *United States v. Pena-Carrillo*, 46 F.3d 879, 883 (9th Cir. 1995); *Benitez*, 34 F.3d at 1494-95 (no § 3161(b) violation even though state prosecuting attorneys and federal attorneys repeatedly discussed whether the United States intended to file charges).

The participation of SA Fisher in the investigation was not improper collusion with the intent to evade the Speedy Trial Act's requirements.

Because there was no collusion there can be no violation of the Speedy Trial Act.

## V.    The charges in the indictment do not lack specificity.

Defendant argues that the indictment lacks specificity because he cannot determine from the face of the indictment whether he is charged with conduct relating to pond construction on the White Pond Lode and the Manhattan Lode or just the Manhattan Lode.  Df. Br. at 4.  While the White Pine Lode property owned by the defendant is referenced in the background section of the indictment, Counts I, II, and III of the indictment plainly state where the charged offenses occurred. Counts I and II allege that the offenses charged in those counts occurred "more specifically within the area depicted as National Forest System Lands depicted in Exhibit A" of the indictment.  Count III alleges that the offense occurred "more specifically within the area depicted as the Manhatten [sic][3] Lode property in Exhibit A" of the indictment.

An indictment is sufficient if: (1) it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend;

_____

[3] The government has discovered that the indictment incorrectly misspells Manhattan as "Manhatten."  Exhibit A of the indictment contains the correct spelling, "Manhattan."

and (2) it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *United States v. Hill*, 279 F.3d 731, 741 (9th Cir. 2002) (citing *Hamling v. United States*, 418 U.S. 87 (1974); *see also* Fed.R.Crim.P. 7(c)(1). When reviewed for sufficiency and indictment must be read in its entirety, construed according to common sense, and read to include facts which are necessarily implied. *United States v. Anderson*, 532 F.2d 1218, 1222 (9th Cir. 1976). Here, the indictment plainly charges defendant with offenses occurring on the National Forest System Lands and the Manhattan Lode properties only. While the White Pine Lode property owned by the defendant is mentioned in the background section of the indictment to provide additional information regarding the relationship of that property, the government did not charge any offenses occurring on the White Pine Lode property.

////

////

////

////

////

////

////

## VI.  **Conclusion.**

For all of the reasons stated above, Robertson's Motion to Dismiss should be denied.

DATED this 10th day of July, 2015.

MICHAEL W. COTTER
United States Attorney

/s/ *Eric E. Nelson*
Special Assistant United States Attorney

/s/ *Bryan R. Whittaker*
Assistant United States Attorney
Attorneys for Plaintiff

## **CERTIFICATE OF COMPLIANCE**

Pursuant to D. Mont. LR 7.1(d)(2) and CR 47.2, the attached Response is proportionately spaced, has a typeface of 14 points or more, and the body contains 5275 words.

/s/ *Eric E. Nelson*
Special Assistant United States Attorney

/s/ *Bryan R. Whittaker*
Assistant United States Attorney
Attorneys for Plaintiff