**ERIC E. NELSON**
**Special Assistant U.S. Attorney**
**BRYAN R. WHITTAKER**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**901 Front Street, Suite 1100**
**Helena, MT 59626**
**Phone: (406) 457-5120**
**FAX:  (406) 457-5130**
**Email: Nelson.Eric@epa.gov**
**        Bryan.Whittaker@usdoj.gov**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| UNITED STATES OF AMERICA, | CR 15-07-H-DWM |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' TRIAL BRIEF** |
| JOSEPH DAVID ROBERTSON, | |
| Defendant. | |

The United States of America, by and through its counsel, Special Assistant

United States Attorney Eric E. Nelson and Assistant United States Attorney Bryan

R. Whittaker, files this trial brief pursuant to the Court's scheduling order.

## I.    STATEMENT OF THE CASE

On May 20, 2015, Joseph David Robertson was charged in a three count Indictment:  Two counts of unauthorized discharge of pollutants into waters of the United States, 33 U.S.C. §§ 1319(c)(2)(A); and one count of Malicious Mischief – Injury/Depredation of Property of the United States, 18 U.S.C. § 1361.

The case involves the defendant's unauthorized construction of a series of ponds between October 2013 and October 2014 on two properties near Basin, Montana:  (1) National Forest System Lands in the Beaverhead-Deerlodge National Forest (also referred to as the "Mohawk" mining claim because of sporadic unpatented mining claims that have been filed with respect to the property); and (2) a privately owned patented mining claim property known as the "Manhatten Lode."  The excavation and pond construction activities resulted in the discharge of dredged and fill material into a tributary and adjacent wetlands located on those two properties, causing widespread damage to both properties.

## II.    ANTICIPATED PROOF

The defendant owns and resides on a patented mining claim property known as the White Pine Lode adjacent to and north of the NFSL property, which is in turn north of and adjacent to the Manhatten Lode property.  (See Exhibit A of the

Indictment for aerial photograph depicting relationship of the properties).  The parties have stipulated to the admissibility of Exhibit A.

### A. October 24, 2013:  SA Fisher site visit to NSFL property to determine defendant's compliance with conditions of probation issued by U.S. Magistrate Jeremiah Lynch

United States Forest Service Special Agent Jackie Fisher is expected to testify that, on October 24, 2013, she visited the NFSL property to determine if the defendant had complied with the conditions of probation ordered by U.S. Magistrate Jeremiah Lynch as part of the court's June 26, 2012 judgment and sentence of the defendant for misdemeanor violations of USFS regulations.  The six-month term of probation required the defendant to remove various structures, including a barn, fence, and culvert that he had constructed on NFSL without authorization, and to repair resource damage to the NSFL caused by the defendant.

During this site visit to the NFSL property, SA Fisher observed multiple locations where someone had dug a series of ponds in a stream.  At this time, SA Fisher observed that the pond construction extended slightly beyond USFS property to the Manhattan Lode property, a property that was formerly owned by the defendant.  SA Fisher took photographs of the scene, which will be offered into evidence.

SA Fisher was aware that the defendant had lost the land when it was sold during a Jefferson County Sherriff's auction to a real estate agent from Helena,

Montana (Liane Taylor), who was currently trying to resell the property.  SA

Fisher made contact with Taylor, who confirmed to SA Fisher that she did not dig

in the area, nor had she hired or allowed anyone else to do so.

### B.  November 6, 2013 site visit by SAs Fisher and Siler; Admissions of the Defendant

It is anticipated that SAs Fisher and United States Environmental Protection

Agency (EPA) Special Agent Kelly Siler will testify that, on November 6, 2013,

SAs Siler and Fisher, along with Jefferson County Deputy Sheriff Seth Wenzel,

visited the site and found the defendant, along with his wife and another unknown

man, on ATVs.  SA Fisher asked the defendant about the excavation activities, and

the defendant stated that he was building ponds to protect his property from fire,

which he had a right to do.  Fisher asked the defendant if he had a permit or written

authorization to conduct the activity.  The defendant replied that Ron Spoon (a

Montana Department of Fish, Wildlife and Parks biologist), had been to the

property a few years ago and had told him he had a right to the water.  Fisher asked

the defendant if he had a permit from the U.S. Forest Service to conduct

excavation work on NFSL.  The defendant stated he had submitted an application

many years ago, but had not received a response.  Fisher had previously checked

U.S. Forest Service files, and had determined that the defendant had submitted a

proposed "Plan of Operations" required for mining operations on NFSL when

conducting mechanized activities that result in significant surface disturbance.  The

files reflected that the Forest Service had denied his proposed plan of operations because they were deemed incomplete, and had specifically rejected a proposal to convert a mining "test pit" into a stock pond because such activity was inconsistent with mining activities permitted on NFSL.  When SA Fisher relayed this information to the defendant, the defendant stated that he only accepts certified mail and that he had not received the Forest Service response.

SA Fisher also informed the defendant that she was aware that he had lost the Manhattan Lode property and that the current owner resides in Helena.  The defendant's wife, Carrie Robertson, claimed that they had purchased the property back.  When SA Fisher asked to see documentation to support their statements, they refused to provide them.

After SA Fisher spoke with the defendant about his previous USFS violations, SA Siler questioned the defendant about the excavation activities, while they both walked along the west side of the site. Again, the defendant admitted to SA Siler that he had performed all of the work, using an excavator at the site (which he pointed to).  SA Siler observed that the work consisted of several small to medium size ponds, which the defendant said he dug to provide water for his homestead, specifically to fight wildfires and water his horses.  SA Siler asked the defendant if he had a permit to do the work and he said *"no"*, but stated he had spoken to Ron Spoon, of Montana Fish, Wildlife and Parks (MT FWP), who gave

him permission to do *"whatever he wanted"* on his property.  SA Siler informed

the defendant that the work required permitting and advised him to contact the US

Army Corps of Engineers (ACOE), Helena, MT and/or the Montana Department of

Environmental Quality (DEQ), to seek further guidance and assistance before

conducting any further work.

### C. November 15, 2013 site visit by SA Fisher, Sheriff Deputy Seth Wenzel and Liane Taylor; Filing of Complaint by Liane Taylor with the Jefferson County Sheriff's Office.

On November 15, 2013, Liane Taylor and a companion, Mike Fasbender,

visited the Manhattan Lode property with Jefferson County Deputy Sheriff Seth

Wenzel.  SA Fisher SA joined them on the site visit.  SA Fisher will testify that she

found additional work had been conducted in the stream since her last visit on

November 6, 2013, including the excavation of a few more large ponds on the

Manhattan Lode property.  She also observed a large tracked excavator on the

NSFL property.  SA Fisher took photographs to document her observations.

During this site visit, Deputy Wenzel employed a body camera that captured

video footage of the visit.  He also took photographs to document the condition of

the property.  The total length of the video footage captured by the body camera is

approximately 46 minutes.  It is anticipated that Deputy Wenzel will testify

regarding his observations during the visit, including photographs.  The

6

government anticipates offering a five to six minute segment of the body camera footage to show the damage caused by the excavation activities at the site.

It is anticipated that Liane Taylor will testify regarding her own observations during the November 15, 2013 site visit, and confirm that she did not authorize the defendant or anyone else to conduct excavation activities or build ponds along the tributary flowing through the Manhattan Lode property.  Taylor will also present the deed to the property, which reflects that she purchased the property at a Sheriff's sale on February 22, 2012, and obtained the deed on April 11, 2013 following a one-year waiting period.  The deed was recorded with Jefferson County Clerk and Recorder on April 12, 2013.

Taylor will also testify that, following the site visit, she filed a voluntary statement and Application for Complaint with the Jefferson County Sheriff's office.

### D. **May 20, 2014 Site Visit**

On May 20, 2014, SA Siler, SA Fisher, Ron Spoon (State of Montana Department of Fish, Wildlife and Parks - FWP), Darin Watschke, (USFS Fish Biologist), Jess Davies (U.S. Army Corps of Engineers Natural Resource Specialist), Jefferson County Under-Sheriff Mike Johnson, and Jefferson County Chief Deputy Attorney Steve Haddon visited the site.

During this visit, SA Siler observed that, since his previous visit on November 6, 2013, additional work had been performed at the site. SA Siler walked the area with a GPS and determined the impacted area to be approximately 1.2 acres in size, consisting of nine ponds of various sizes. He also took photographs of the area. There were various types and sizes of pipes connecting each pond together and appeared to act as overflow devices. Additionally, there were several berms and dams built in and around the ponds. The material used to create these appeared to be material taken from the surrounding area and placed within the stream. Before SA Siler left the site, the defendant arrived. SA Siler asked the defendant if he had completed additional work, since the last time SA Siler was there. The defendant admitted that he did the work himself.

During the May 20, 2014, site visit, USFS Fish Biologist Darin Watschke performed field review and resource damage assessment on the NFSL. Mr. Watschke will offer expert testimony regarding his findings, which are described in the expert witness disclosures filed with the court.

Also during the May 20, 2014 site visit, the Jess Davies, a natural resources specialist with the United States Army Corps of Engineers (ACOE) conducted field observations to assist the ACOE in making a jurisdictional determination regarding whether the tributary and adjacent wetlands are "waters of the United States" subject to federal Clean Water Act regulation. Mr. Davies is expected to

testify about his observations, and authenticate photographs he took during the site visit.

Finally, during the May 20, 2014, Ron Spoon from the State of Montana Department of Fish Wildlife and Parks (FWP) also observed the excavation activities.  Mr. Spoon will testify that the excavation activity was completely inconsistent with Mr. Spoon's previous advice to the defendant in 2009 to build a pond on the Manhatten Lode "off-stream" in order to avoid impacting the stream and surrounding riparian areas. (See further discussion of state permitting activities, below).

### E. June 3, 2014 attempted issuance of Notice of Violation by the U.S. Army Corps of Engineers

It is anticipated that Todd Tillinger, the Montana Program Manager for the U.S. Army Corps of Engineers, will testify that, on June 3, 2014, he issued a Notice of Violation (NOV) letter to the defendant, advising him that the ACOE had found that the defendant had discharged dredged and fill material into waters of the United States without an ACOE permit as required by 33 U.S.C. § 1344. Mr. Tillinger will testify that the NOV letter was sent via certified mail, but the letter was not accepted by the recipient, and returned to the ACOE.  The ACOE referred the matter to EPA for enforcement consideration.

It is further anticipated that Doug Grant, a Postal Office employee working at the Post Office where the defendant receives his mail in Basin, Montana, observed the defendant's wife throw the certified mail notice into the trash at the Post Office.  He notified Mr. Tillinger of this fact by e-mail, and will testify that after the failed attempts to deliver the certified letter, the letter was returned to the sender (ACOE).

F.  **October 21, 2014 Site Visit**

On October 21, 2014, SA Siler and wetlands experts from the United States Army Corps of Engineers (Todd Tillinger and Jess Davies) and the EPA (Richard Clark) visited the site to conduct field observations and measurements to more fully determine whether the waters and wetlands disturbed by Robertson's pond construction activities constitute "waters of the United States" subject to CWA jurisdiction.  Mr. Tillinger and Mr. Clark both completed reports of their findings. Mr. Tillinger is expected to offer expert testimony concluding that the unnamed tributary flowing through the NFSL and Manhattan Lode Properties and wetlands adjacent to the tributary are waters of the United States.  Mr. Clark is expected to provide expert testimony that, based upon his site observations, soil and vegetation analysis, that the area disturbed by the excavation activities included wetlands directly abutting and adjacent to the unnamed tributary.

During this site visit, SA Siler shot a video recording of the areas disturbed by the defendant's excavation activities, and it is expected that SA Siler will testify and show the video to the jury.  SA Siler will testify that, based upon his observations on October 21, 2014, and on review of a Google Earth aerial imagery of the area that was taken on July 26, 2014, that additional ponds had been constructed on the NFSL property since his last visit in May 20, 2014 and since the July 26, 2014 aerial image was taken.

G. **The Defendant did not receive authorization to build ponds or conduct dredging and filling activities on the unnamed tributary and adjacent wetlands on the NFSL and Manhattan Lode properties.**

As mentioned above, it is anticipated that Todd Tillinger, the Montana Program Officer for the ACOE, will testify that the defendant did not have a permit to conduct the excavation activities that resulted in the discharge of dredged and fill material into waters of the United States as required by 33 U.S.C. § 1344.  He will also testify that the ACOE has not delegated Section 1344 permitting authority to the State of Montana or any other local governmental unit within the State of Montana.  Only the ACOE can issue Section 1344 permits for the discharge of dredged and fill material into waters of the United States.

1. *The defendant was refused permission to construct a stock pond on the NFSL property.*

It is anticipated that two United States Forest Service officials (Steve Kelly, Minerals Administrator for the Butte Ranger District, Beaverhead-Deerlodge

National Forest; and Terry Sexton, former District Ranger – retired) will testify that, in 2008, the defendant submitted an incomplete proposed "Plan of Operations" to conduct mining activities on the NFSL property.  Approved Plans of Operation are required by 36 C.F.R. Part 228 when a person proposes to conduct mining operations that might cause significant disturbance of surface resources. Mr. Kelly and Mr. Sexton will testify that the defendant's proposed Plan included a proposal to build a mining test pit, and then convert the test pit to a stock pond. Both Mr. Kelly and Mr. Sexton made several attempts to send letters to the defendant, including a letters by District Ranger Sexton advising the defendant that the creation of a stock pond would be inconsistent with mining activity and could not be allowed.  The USFS attempted to send this correspondence to the defendant, including via certified mail, and made several other unsuccessful attempts to contact him by phone to speak with him about his proposed Plan of Operations. Mr. Kelly will also testify that the Forest Service has never issued the defendant an approved Plan of Operations, and thus he has never had authority to conduct mechanized surface disturbing activities on the NFSL of any kind.

In addition, the government anticipates that Connie Schaff, a Land Law Examiner for the United States Department of Interior, Bureau of Land Management (BLM), will testify that the defendant has periodically filed unpatented mining claims on the NFSL property, but has allowed those claims to

lapse.  Based upon her review of BLM mining claim records, she will testify that the defendant did not have an active mining claim filed at the time of the offenses charged in the indictment.

> 2. *The defendant received a state "310" permit to build an "off-stream" pond on the Manhattan Lode property in 2009.  That permit did not authorize the pond construction activities that took place in 2013 and 2014, and in fact put him on notice that a person engaged in such activity is responsible for obtaining all required permits, including, if applicable, a Section 1344 permit from the Army Corps of Engineers.*

It is anticipated that Ron Spoon, a fish biologist for State of Montana Fish, Wildlife and Parks (FWP), will testify that he visited the defendant several years ago[1] to discuss the defendant's proposal to build a pond on the Manhatten Lode property, which the defendant owned at the time.  Mr. Spoon will testify that, after visiting the property and speaking with the defendant, he advised him to build a pond "off-stream" in order to avoid impacting the tributary flowing through the property, which he advised would trigger more onerous permitting requirements and conditions.  Mr. Spoon also advised the defendant that as a fish biologist for Montana FWP, he could only consult landowners and the Jefferson Valley

---

[1] During successive interviews with SAs Siler and Fisher, Mr. Spoon recalled visiting the defendant many years ago, and advising him to build a pond offstream, but gave inconsistent accounts of when and where that consultation occurred, and did not know if a permit had been issued.  A recent review of documents in the possession of the Jefferson Valley Conservation District files by SA Siler has revealed that this consultation likely took place on May 26, 2009, and resulted in a permit for an "off-stream" pond being issued by the JCCV on September 23, 2009.

Conservation District (JVCD), which had the authority to approve state 310 permits[2].  He did not have authority to issue a permit himself.

It is further anticipated that Tom Carey, a member of the JVCD board, will testify that he accompanied Mr. Spoon during the on-site consultation with the defendant at the Manhattan Lode property in 2009.  He also was one of the JVCD board members who signed off on the 310 permit on September 23, 2009.  The permit makes clear that the JVCD approval was for an "off-stream" pond only.  Moreover, the permit states that "[e]xcavated material will not be placed in the wetland area and all disturbed areas will be re-seeded."  Based upon these conditions, the permit review section concluded that the proposed off-stream pond would have insignificant impact on soil erosion, sedimentation, risk of flooding or erosion problems upstream or down, effects on streamflow, and effects on fish and aquatic habitat.

---

[2] The Montana *Natural Streambed and Land Preservation Act of 1975*, 75-7-101 *et seq.*, MCA (commonly known as the "310 law" after its original legislative designation as Senate Bill 310), requires an individual proposing any activity that physically alters or modifies a perennially flowing stream in Montana to apply for a 310 permit. *Bitterroot River Protection Ass'n, Inc. v. Montana Dept. of Fish, Wildlife and Parks*, 198 P.3d 219 (Mont. 2008).  The permitting process, developed through the cooperation of state and federal agencies, requires the applicant to fill out a "joint permit" application form that is initially processed by the local conservation district. The form is designed to allow the applicant to use a single form "to apply for all local, state or federal permits listed below," including a "Section 404 Permit" administered by the U.S. ACOE.  The form expressly states that "[t]he applicant is responsible for obtaining all necessary permits and landowner permission before beginning work."  *See generally,* http://www.dnrc.mt.gov/Permits/StreamPermitting/JointApplication.asp  and http://www.dnrc.mt.gov/Permits/Documents/JointApplicationForm.pdf

As noted above, Mr. Spoon is expected to testify that he visited the NFSL and Manhatten Lode properties on the May 20, 2014 site visit, and that the excavation conditions he observed were completely inconsistent with his advice to the defendant to build a pond off-stream.  He will also testify that he was unaware that the defendant was proposing to build a pond on NFSL property, and that such a proposal would have raised red flags.

### H. **The Defendant caused over $1,000 in damage to a Property of the United States.**

The United States anticipates calling Scott Gillilan, an expert in the field of river, stream, riparian and wetland reclamation and restoration, to offer an opinion as to the estimated costs necessary to remediate the damage caused by the defendant's excavation activities.  Mr. Gillilan conducted a site visit to the impacted properties on July 27, 2015, and prepared a report of his findings on July 28, 2015.  Mr.  Gillilan is expected to testify that site design and reclamation activities alone would cost $69, 287, and that full restoration, if possible, would cost considerably more.  He also estimated that the value of lost wetlands at the impacted site would cost between $25,000 and $40,000 per acre.  He also will testify that the portion of these costs attributable to only the NFSL property would be greatly in excess of $1,000.

### III.   ANTICIPATED DEFENSES

It is anticipated, based upon the defendant's motion to dismiss pleadings and conversations with defense counsel, that the defendant will challenge whether the waters and wetlands are "waters of the United States" subject to Clean Water Act jurisdiction.  As noted in the government's sur-reply, the government is prepared, through presentation of fact and expert testimony, to prove this element of the Clean Water Act offenses charged in Counts I and III.

It is also anticipated that the defendant will claim that Ron Spoon's consultation and the issuance of the state 310 permit to the defendant constituted a permit to conduct the excavation activities within and along the unnamed tributary and abutting wetlands on the NFSL and Manhatten Lode properties.  The government is prepared to demonstrate that the 310 permit could not and did not authorize the excavation activities at issue in the indictment.  Indeed, the 310 permit issued to the defendant and Mr. Spoon's consultation put the defendant on direct notice that such activities could trigger additional permitting requirements, including the requirement to obtain an ACOE permit under Section 1344 of the CWA, and that it was the applicant's responsibility to determine what permits were necessary.

Finally, it is anticipated, based upon a vague reference in defendant's motion to dismiss pleadings, that the defendant may attempt to assert an affirmative defense that he constructed the ponds in part for stock watering, and that such

16

activity is exempt from CWA permitting pursuant to 33 U.S.C. § 1344(f)(1)(C).

However, as noted in the government's Sur-reply, the government is prepared to

show that the stock pond exemption claim is factually and legally unsupportable in

this case. The defendant's request to construct a stock pond on NFSL property was

specifically rejected by the District Ranger. Moreover, at the time of the offenses

charged in Count III of the indictment, the defendant did not have ownership or

authorization from Liane Taylor to construct stock ponds on the Manhattan Lode

property.

## IV.   ELEMENTS OF THE OFFENSES CHARGED

### A. Counts I and III – Clean Water Act, Unauthorized Discharge of Pollutants into Waters of the United States

In order for the defendant to be found guilty of the Clean Water Act offenses

charged in Counts I and III of the indictment, the United States must prove each of

the following elements beyond a reasonable doubt:

1.    That on or about the dates charged, the defendant discharged a

pollutant, in this case, dredged or fill material;

2.    That the pollutant was discharged from a point source;

3.    That the discharge was to a "water of the United States";

4.      The defendant had no permit from the United States Army Corps of Engineers to discharge the pollutant; and

5.      That the defendant acted knowingly.

## B.  Counts II – Malicious Mischief, Injury/Depredation of Property of the United States

In order for the defendant to be found guilty of the depredation offense charged in Count II of the indictment, the United States must prove each of the following elements beyond a reasonable doubt:

1.      That on or about the dates charged, the defendant willfully injured or committed depredation to the specific property of the United States or any department or agency thereof as alleged in the indictment;

2.      The damage inflicted by the defendant to the property was in excess of $1000.

DATED this 30th day of July, 2015.

MICHAEL W. COTTER
United States Attorney

/s/ *Eric E. Nelson*
Special Assistant U.S. Attorney
Attorney for Plaintiff

## **CERTIFICATE OF COMPLIANCE**

Pursuant to D. Mont. LR 7.1(d)(2) and CR 47.2, the attached trial brief is

proportionately spaced, has a typeface of 14 points or more, and the body contains

___ words.


/s/ *Eric E. Nelson*
Special Assistant U.S. Attorney
Attorney for Plaintiff