# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

UNITED STATES OF AMERICA,
                        Plaintiff,

vs.

JOSEPH DAVID ROBERTSON,
                        Defendant.

CR 15-07-H-DWM

## DEFENDANT ROBERTSON'S TRIAL BRIEF

**MICHAEL DONAHOE**
Senior Litigator
Federal Defenders of Montana
50 West 14th Street, Suite 300
Helena, Montana 59601
Telephone: (406) 449-8381

SUBMITTED: September 18, 2015    **Counsel for Defendant

TABLE OF CONTENTS

Page No.

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.     OTHER MATERIAL SUBMITTED WITH THIS BRIEF. . . . . . . . . . . . .  2

III.    LAW OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

        (A)     The Supreme Court flip flops on Chevron deference. . . . . . . . . . . . . .  2

        (B)     *Rapanos v. United States* not only fails to resolve the
                tension between *Riverside Bayview Homes, Inc.*
                and *SWANCC* it amplifies the confusion. . . . . . . . . . . . . . . . . . . . .  5

        (C)     In the unique circumstances of this case the combined
                inability of the Supreme Court and the agencies
                to clarify in understandable terms the phrase "waters
                of the United States" results in a due process violation. . . . . . . . . . .  8

        (D)     The government's proposed jury instruction defining
                "waters of the United States" should be rejected because
                it is not the law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

        (E)     The government must prove beyond a reasonable
                doubt that Mr. Robertson knew he was impacting "the
                waters of the United States" by digging his ponds. . . . . . . . . . . . . .  11

                1.      The *Staples* Decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13
                2.      Ninth Circuit Decisions. . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
                3.      Why the Ninth Circuit Decisions don't apply and
                        *Staples* does. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

(F)    The government's "waters of the United States"
        proposed jury instruction (Appx. pp. 19-21) is wrong
        and neither can nor should be given for multiple reasons... . . . . . . . 23

IV.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

V.    CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## TABLE OF AUTHORITIES

Page No.

<u>TABLE OF CASES</u>

*Brown v. United States*,
    334 F.2d 488 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Chevron U.S.A. Inc. v. Natural Resources*
    *Defense Council, Inc.*, 467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . 2, 3, 5-8

*Hanousek v. United States*,
    528 U.S. 1102, 120 S. Ct. 860 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Headwaters, Inc. v. Talent Irrigation District*,
    243 F.3d 526 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Holdridge v. United States*,
    282 F.2d 302 (8th Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Kolendar v. Lawson*,
    461 U.S. 352 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Liparota v. United States*,
    471 U.S. 419 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Marks v. United States*,
    430 U.S. 188 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McWane, Inc. v. United States*,
    555 U.S. 1045 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Morissette v. United States*,
    342 U.S. 246 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 20, 21

*National Cable & Telecommunications Ass'n*
    *v. Brand X Internet Services,* 545 U.S. 967 (2005) . . . . . . . . . . . . . . . . . . . . 7

Federal Defenders of Montana
50 West 14th Street, Suite 300
Helena, Montana 59601
(406) 449-8381

iii

*Northern California River Watch v. City of Healdsburg,*
  457 F.3d 1023 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Northern California River Watch v. City of Healdsburg,*
  496 F.3d 993 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Northern California River Watch v. Wilcox,*
  633 F.3d 766 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rapanos v. United States,*
  547 U.S. 715 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-11, 23-26

*Ratzlaf v. United States,*
  510 U.S. 135 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 22

*Rowan v. U.S. Post Office Dept.,*
  397 U.S. 728 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sierra Club v. U.S. Environmental Protection Agency,*
  762 F.3d 971 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Solid Waste Agency of Northern Cook County*
  *v. U.S. Army Corps of Engineers,* 531 U.S. 159 (2001) . . . . . . . . . . . . . 3-5

*Staples v. United States,*
  511 U.S. 600 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-17, 19-22, 26

*United States v. Ahmad,*
  101 F.3d 386 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Archer, et al.,*
  486 F.2d 670 (2nd Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Bailey,*
  571 F.3d 791 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Balint,*
        258 U.S. 250 (1922). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 21

*United States v. Barrigan-Mendoza,*
        174 F.3d 1024 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Cundiff,*
        555 F.3d 200 (6th Cir. 2009),
        *cert. denied* 558 U.S. 818 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Donovan,*
        661 F.3d 174 (3rd Cir. 2011),
        *cert. denied*, 132 S.Ct. 2409 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Dotterweich,*
        320 U.S. 277 (1943). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 21

*United States v. Freed,*
        401 U.S. 601 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*United States v. Gerke Excavating, Inc.,*
        464 F.3d 723 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 25

*United States v. Hanousek,*
        176 F.3d 1116 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-21

*United States v. International Minerals & Chemical Corp.,*
        402 U.S. 558 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 20

*United States v. Johnson,*
        467 F.3d 56 (1st Cir. 2006),
        *cert. denied* 552 U.S. 948 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Lanier,*
        520 U.S. 259 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 23

*United States v. Moses*,
    496 F.3d 984 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Nguyen*,
    73 F.3d 887 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Precon Devolpment Corp. Inc.*
    *v. U.S. Army Corps of Engineers*,
    633 F.3d 278 (4th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Riverside Bayview Homes, Inc.*,
    474 U.S. 121 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

*United States v. Robison*,
    505 F.3d 1208 (11th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 24

*United States v. United States Gypsum*,
    438 U.S. 422 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Weitzenhoff*,
    35 F.3d 1275 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-19, 21

## STATUTES AND RULES

## United States Code

33 U.S.C. §1319(c)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

Clean Water Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4, 6, 7, 9-13, 16-24

Narcotic Act of 1914 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

National Firearms Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## Federal Rules of Evidence

Rule 201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## UNITED STATES CONSTITUTION

10th Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Commerce Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## OTHER SOURCES

Advance Notice of Proposed Rulemaking on the
    Clean Water Act Regulatory Definition of
    "Waters of the United States", 68 FR 1991-01 . . . . . . . . . . . . . . . . . . . . . . . 4

*Corps of Engineers Needs to Evaluate Its*
    *District Office Practices In Determining Jurisdiction*,
    GAO-04-297. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Webster's Second . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Defenders of Montana
50 West 14th Street, Suite 300
Helena, Montana 59601
(406) 449-8381

vii

MICHAEL DONAHOE
Senior Litigator
Federal Defenders of Montana
Helena Branch Office
50 West 14th Street, Suite 300
Helena, Montana 59601
(406) 449-8381
Counsel for Defendant Joseph David Robertson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>JOSEPH DAVID ROBERTSON,<br>Defendant. | CR 15-07-H-DWM<br><br>**DEFENDANT ROBERTSON'S<br>TRIAL BRIEF** |

## I. INTRODUCTION

COMES NOW the defendant through his undersigned counsel and in conformity with the Court's scheduling order (ECF No. 39) offers the following trial brief for use during the trial of this cause scheduled to commence before the Court, sitting with a jury, on October 5, 2015 in Helena. Moreover, the defense did its best to prepare this brief and file it early so that the Court and the government will have ample time to digest the defense stance on the issues that this case presents.

## II.  OTHER MATERIAL SUBMITTED WITH THIS BRIEF

Although unorthodox for a trial brief we support this document with a paginated Appendix of material.  In referring to this Appendix we employ the abbreviation Appx. along with the relevant page number(s); *e.g.* Appx. at p. 1.  The Appendix has its own index and consists of things like the Indictment (Appx. at pp. 1-7), relevant jury instructions proposed by the government (Appx. pp. 8-25) and decisions of other courts that we submit will aid in understanding the points raised here.

## III.  LAW OF THE CASE

**(A)**   ***The Supreme Court flip flops on Chevron deference***.

**The law of this case is indecipherable to mortal man.**

Thirty years ago the Supreme Court accorded deference to the Corps of Engineers' construction of the term of art "waters of the United States" under the Clean Water Act.  *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985) (Appx. pp 26-36).  Essentially the Court held that federal jurisdiction over "waters of the United States" includes wetlands adjacent to "other bodies of water over which the Corps has  jurisdiction."  *Riverside Bayview Homes, Inc.*, *supra*, 474 U.S. at 132-135 (Appx. pp. 33-35).  Procedurally *Riverside Bayview Homes, Inc.* rests on the eponymous presumption known in federal law as "*Chevron* deference."  *See,*

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) (Appx. pp. 37-52). In other words in *Riverside Bayview Homes, Inc.* the Court deferred to the Corps' interpretation of the statute, which is customary when an Executive Agency is charged with enforcement of statutory law enacted by Congress. (Appx. p. 41).

Following *Riverside Bayview Homes, Inc.* the Court decided *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers*, [*aka* SWANCC], 531 U.S. 159 (2001) (Appx. pp. 53-74). There, the Court held that Clean Water Act jurisdiction does not extend to allow regulation of isolated ponds that evolved over time in an abandoned sand and gravel pit. Apparently when the sand and gravel pit was an active business material would be excavated leaving holes that would fill up either permanently or seasonally with ground and/or rain water. On these ponds migratory birds would alight to rest. In time a group of cities wanted to use the abandoned site as a solid waste dump so the Corps of Engineers was consulted about the ponds. Citing the "Migratory Bird Rule" that it had promulgated in its regulations the Corps refused the cities a permit to fill in the ponds. The cities sued in federal district court challenging the government's jurisdiction. Losing there the cities moved on to the Seventh Circuit.

That Court held that Congress had the authority under the Commerce Clause to regulate intrastate waters and further that the "Migratory Bird Rule" was a reasonable interpretation of the Clean Water Act. The Supreme Court reversed however in part relying on the point that the "Migratory Bird Rule" was the Corps' attempt to "push the limit of congressional authority." 531 U.S. at 173 (Appx. p. 61); suggesting that the "Migratory Bird Rule" involved serious constitutional issues under both the Commerce Clause and the 10th Amendment. Issues that the Court held the Clean Water Act intended to void. ("We thus read the statute as written to avoid the significant constitutional and federalism questions raised by respondent's interpretation, and therefore reject the request for administrative deference"). 531 U.S. at 174 (Appx. pp. 61-62).[1]

After *SWANCC* the EPA published a "guidance" to help interpret the scope of the ruling and it also issued a notice of its intent to amend the regulations defining "waters of the United States" 68 Fed. Reg. 1991 (proposed January 15, 2003 (Appx. pp. 75-89)). However the rule was never amended in the regulations for two reasons. First, because there was a lot of opposition to the proposed change. *See* United States General Accounting Office — *Waters And Wetlands: Corps of Engineers Needs to*

---

[1]Justice Scalia will emphasize this point in *Rapanos*, which follows next in our discussion. (*See* Appx. pp. 137-139).

*Evaluate Its District Office Practices In Determining Jurisdiction*, GAO-04-297 (2004) at pages 13-14. (Appx. pp. 102-103). And second because when courts began interpreting *SWANCC* the reach of the decision was deemed to be narrow. *See e.g. Headwaters, Inc. v. Talent Irrigation District*, 243 F.3d 526, 533 (9th Cir. 2006) (*SWANCC* was deemed water of the United States). (Appx. p. 120).

In terms of a score card it's easy to see that *Riverside Bayview Homes*, *Inc*. afforded *Chevron* deference but *SWANCC* refused to grant *Chevron* deference. And important to our purposes here it's also significant that despite the decisions in *Riverside Bayview Homes, Inc.* and *SWANCC* neither the EPA nor the Corps amended its regulations to bring them in line with those decisions. A point Chief Justice Roberts laments in his concurring opinion in *Rapanos*. (Appx. p. 149).

> **(B)   *Rapanos v. United States not only fails to resolve the tension between Riverside Bayview Homes, Inc. and SWANCC it amplifies the confusion*.**

This brings us to *Rapanos v. United States*, 547 U.S. 715 decided in 2006 (Appx. pp. 122-177). It involves the regulation of *wetlands* adjacent to non-navigable *tributaries* of a *traditionally navigable water*. All terms of art governed by regulations codified by the EPA/Corps pursuant to its *Chevron* discretion. However (and we can't stress this enough) in *Rapanos* four Justices grant *Chevron* deference (the dissenters); four Justices deny it (the plurality); and one Justice ignores

the *Chevron* deference issue altogether (Justice Kennedy).  Furthermore, the plurality under the pen of Justice Scalia (Appx. pp. 128-149), and the dissent per Justice Stevens (Appx. pp. 163-177), wage a pitched battle on the question whether *Chevron* deference should be granted, inasmuch as the case involves settled regulatory interpretations of the ambiguous Clean Water Act.  A subject that would in the usual course demand that *Chevron* deference be granted since both the EPA and the Corps have the scientific expertise and a Congressional mandate to administer the Clean Water Act.

Bearing in mind that in *Rapanos* there is no majority consensus on the *Chevron* deference question a careful review of Justice Scalia's plurality decision in *Rapanos* (where four members of the Court are in agreement) discloses another colossal layer of complexity:

> In sum, on its only plausible interpretation, the phrase "the waters of the United States" includes only those relatively permanent, standing or continuously flowing bodies of water "forming geographic features" that are described in ordinary parlance as "streams[,] ... oceans, rivers, [and] lakes." See Webster's Second 2882. The phrase does not include channels through which water flows intermittently or ephemerally, or channels that periodically provide drainage for rainfall. The Corps' expansive interpretation of the "the waters of the United States" is thus

not "based on a permissible construction of the statute." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

> *United States v. Rapanos*, 126 S.Ct. at 2225 (Appx. p. 139)

The categorical nature of this ruling endorsed by four members of the Court leaves no room for doubt that, at least as far as the plurality is concerned, its construction of the phrase "the waters of the United States" is subject to no other reasonable interpretation. Therefore under the rule set forth in *National Cable & Telecommunications Ass'n v. Brand X Internet Services,* 545 U.S. 967 (2005) (Appx. pp. 178-210) the result here is that the plurality decision "unambiguously forecloses [the EPA's and the Corps'] interpretation [of waters of the United States] and therefore contains no gap for [those agencies] to fill . . ." *Id.* at 983 (Appx. p. 190). Thus under the plurality's ruling no other interpretation of the Clean Water Act's term of art "waters of the United States" is plausible except its own; *and any past or future agency construction of it is therefore foreclosed*.

However under the dissent's ruling all of the extant agency interpretations of the phrase "waters of the United States" are a valid result of *Chevron* deference. Moreover, Justice Kennedy only adds to the confusion because he invents his own "substantial nexus" test which of course not only fails to resolve the deadlocked and opposing views of the plurality and the dissent but also reframes the issue altogether

by eschewing any *Chevron* analysis and instead employing a free standing "significant nexus" test which, in part, is highly critical of the Corps' existing standard for defining tributaries. *Rapanos*, 547 U.S. at 781 (Appx. pp. 160-161). A standard the government is trying to employ in this very case.

**(C)**   ***In the unique circumstances of this case the combined inability of the Supreme Court and the agencies to clarify in understandable terms the phrase "waters of the United States" results in a due process violation***.

Criminal statutes must be drafted with specificity sufficient to give a reasonable person notice that the acts contemplated are illegal. *Kolendar v. Lawson*, 461 U.S. 352, 357 (1983) (Appx. pp. 211-226); *Rowan v. U.S. Post Office Dept.*, 397 U.S. 728, 740 (1970) (a statute is fatally vague "when it exposes a potential actor to some risk or detriment without giving him fair warning of the nature of the proscribed conduct") (Appx. p. 237).  Furthermore, although clarity for an uncertain statute may be supplied by judicial gloss, *see e.g. United States v. Lanier*, 520 U.S. 259, 266 (1997) (Appx. pp. 239-250); the due process clause prohibits courts from applying a novel construction of a criminal statute that neither the statute nor any prior judicial decision has fairly disclosed to be with its scope. *Marks v. United States*, 430 U.S. 188, 191-192 (1977) (Appx. pp. 251-259).  In all these iterations the central issue is whether the statute, either on its face or as construed, made it reasonably clear at the

relevant time that the conduct was criminal.

In order for the defendant to be held accountable under Counts I and III of the Indictment (Appx. pp. 5-6) the government must prove that defendant polluted "the waters of the United States."  Neither the statutory language on its face nor any relevant United States Supreme Court decision supplies the notice required for an ordinary citizen to understand with the requisite clarity what "the waters of the United States" means.

**(D)** *The government's proposed jury instruction defining "waters of the United States" should be rejected because it is not the law.*

*Rapanos* is not the law nor can it be considered an authoritative judicial construction of the Clean Water Act.  For reasons already stated *Rapanos* is nothing more than a collection of conflicting views on the meaning of key words and phrases in the Clean Water Act such as "waters of the United States", "tributaries" and "wetlands."  Likewise terms such as "adjacent" and "neighboring" are touched on in *Rapanos* as well.  However under no plausible analysis can *Rapanos* be considered a judicial gloss.  In fact even amongst the circuit courts that have attempted to piece together some credible interpretation of *Rapanos* confusion reigns.

The First, Third and Eighth Circuits have held that Clean Water Act jurisdiction can be established using either the *Rapanos* plurality test or the Justice Kennedy test. *United States v. Donovan*, 661 F.3d 174, 176 (3rd Cir. 2011), *cert. denied*, 132 S.Ct. 2409 (2012) (Appx. pp. 260-274), *United States v. Bailey*, 571 F.3d 791, 799 (8th Cir. 2009) (Appx. pp. 275-290); *United States v. Johnson*, 467 F.3d 56, 66 (1st Cir. 2006), *cert. denied* 552 U.S. 948 (2007) (Appx. pp. 291-301). The Seventh and Eleventh Circuits hold that only Justice Kennedy's test is controlling. *United States v. Gerke Excavating, Inc.*, 464 F.3d 723, 725 (7th Cir. 2006) (Appx. pp. 302-304); *United States v. Robinson*, 505 F.3d 1208, 1222 (11th Cir. 2007), *cert. denied sub non McWane, Inc. v. United States*, 555 U.S. 1045 (2008) (Appx. pp. 305-327).

The Ninth Circuit has held that Justice Kennedy's concurring opinion in *Rapanos* is the "controlling rule of law" *Northern California River Watch v. City of Healdsburg*, 457 F.3d 1023, 1029 (9th Cir. 2006), *amended at* 496 F.3d 993 (9th Cir. 2007) (Appx. pp. 328-345). Indeed *United States v. Moses*, 496 F.3d 984, 990 (9th Cir. 2007) confirms this ruling (Appx. pp. 346-355). Yet after *Moses* was published the Ninth Circuit Panel in *City of Healdsburg* added that Justice Kennedy's opinion was the controlling rule "for our case" 496 F.3d 993, 1000 (9th Cir. 2007) (Appx. p. 342). But as far as we know no Panel in the Ninth Circuit has adopted anything

other than Justice Kennedy's free-standing "significant nexus"  test as the "controlling rule."  *But see, Northern California River Watch v. Wilcox*, 633 F.3d 766, 781 (9th Cir. 2011) (stating in passing ***in a civil case*** that the Ninth Circuit has not foreclosed the argument that Clean Water Act jurisdiction could also be established under the *Rapanos* plurality's statement).  However, notwithstanding this vagrant statement in *Wilcox* there is a vast difference between "not foreclos[ing] the argument" (Appx. p. 371) that Clean Water Act jurisdiction might also be established under the *Rapanos* plurality standard and actually adopting that standard.  Again, as far as we know no case in the Ninth Circuit Court of Appeals has ever taken the position that Clean Water Act jurisdiction can be predicated on both the plurality and Justice Kennedy's view set forth in *Rapanos*.  Moreover, to complete the loop it appears that the Second, Fifth, Tenth and D.C. Circuits have not addressed the question.  *United States v. Precon Devolpment Corp. Inc. v. U.S. Army Corps of Engineers*, 633 F.3d 278, 288 (4th Cir. 2011); *United States v. Cundiff*, 555 F.3d 200, 210, 213 (6th Cir. 2009), *cert. denied* 558 U.S. 818 (2009) (Appx. pp. 372-410).

**(E)**  ***The government must prove beyond a reasonable doubt that Mr. Robertson knew he was impacting "the waters of the United States" by digging his ponds.***

Congress did not intend to subject a well-intentioned citizen, like Mr. Robertson, to a possible 15-year term of imprisonment if his reasonable belief was that a retention hole dug to assist with forest fires would never be considered

discharge of pollution to the waters of the United States.   "[G]uilt is personal."

*Brown v. United States*, 334 F.2d 488, 495 (9th Cir. 1964) (internal quotations and

citations omitted)  (Appx. p. 420).   As such, the Supreme Court has been reluctant to

impute a congressional purpose to a statute that eases the government's route to

convicting people whose conduct does not even alert them to the probability of strict

regulation.   *See Morissette v. United States*, 342 U.S. 246, 263 (1952) (Appx. pp.

430-450).   The Supreme Court has not "undertaken to delineate a precise line or set

forth comprehensive criteria for distinguishing between crimes that require a mental

element and crimes that do not."   *Morissette*, 342 U.S. at 260 (Appx. p. 440).   A

criminal statute is construed "in light of the fundamental principle that a person is not

criminally responsible unless 'an evil-meaning mind' accompanies 'an evil-doing

hand.'" *United States v. Nguyen*, 73 F.3d 887, 890 (9th Cir. 1995) (quoting *Morissette

v. United States*, 342 U.S. 246, 251 (1952)) (Appx. p. 455).   Unless Congress

expressly communicates its intent to dispense with a *mens rea* requirement and create

strict liability, "personal guilt" requires some culpable intent before criminal liability

attaches.

In *Staples v. United States*, 511 U.S. 600 (1994) (Appx. pp. 461-487) the

Supreme Court elaborated on this principle.   Understanding the *Staples* decision and

how the Ninth Circuit has interpreted the Clean Water Act is necessary to resolution

of Mr. Robertson's argument.   Namely, Mr. Robertson contends that, as in *Staples*,

the government is obligated to prove that Mr. Robertson knew the actions he took on his property without a permit made him subject to federal jurisdiction under the Clean Water Act. *Cf. United States v. Archer, et al.*, 486 F.2d 670, 685 (2nd Cir. 1973) (when federal jurisdiction element in prosecution is furnished by government agents stricter standard applies) (Appx. pp. 488-505).

1.    **The *Staples* Decision.**

The defendant in *Staples* was convicted of violating the National Firearms Act; an act that makes it unlawful for any person to possess a machine gun that is not properly registered with the federal government. *Staples*, 511 U.S. at 602 (Appx. p. 463). During a search of the defendant's home, officers located a rifle suspected to have been modified to fire automatically. The defendant contended that the rifle had never fired automatically, and that the government should have been required to prove that he knew the weapon he possessed had the characteristics which brought it within the federal statutory definition of a machine gun. *Id.* at 603-604 (Appx. p. 464).

The statute at issue in *Staples* was silent as to the *mens rea* required for a violation. It stated simply that "[i]t shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record. *Staples*, 511 U.S. at 605 (Appx. p. 465). Defendant argued that the requirement of some *mens rea* was firmly embedded in the statutory offense for

which he was charged.  "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion.  It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."  *Morissette*, 342 U.S. at 250 (Appx. p. 434).

Indeed, offenses that require no *mens rea* are generally disfavored.  *Liparota v. United States*, 471 U.S. 419, 426 (1985) (Government required to prove the defendant knew his conduct was unauthorized by statute or regulations where the statute at issue criminalized the acquisition or possession of food stamps with no explicit *mens rea* requirement.  "[T]o interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct.") (Appx. p. 511).

The government on the other hand argued that the nature and purpose of the National Firearms Act favored strict liability such that no proof of *mens rea* was required.  *Staples*, 511 U.S. at 606 (Appx. pp. 465-66).  Ultimately, the Supreme Court held that the government was required to prove that a defendant charged with possession of a machine gun knew that the weapon he possessed had the characteristics that brought it within the statutory definition of a machine gun.  *Id.* at 619 (Appx. pp. 473-474).

In so holding, the Supreme Court discussed its decision in *United States v. Balint*, 258 U.S. 250 (1922) (Appx. pp. 523-525), wherein the court concluded that the Narcotic Act of 1914 required proof only that a defendant knew he was selling drugs, not that he knew the specific items he sold were "narcotics" within the stricture of the statute. *Balint* dealt with "a now familiar type of legislation whereby penalties serve as effective means of regulation.   Such legislation dispenses with the conventional requirement for criminal conduct – awareness of some wrongdoing." *United States v. Dotterweich*, 320 U.S. 277, 280-81 (1943) (Appx. pp. 526-536); *see also United States v. Freed*, 401 U.S. 601 (1971) (defendant knew the items he possessed were grenades) (Appx. pp. 537-547).

Following the *Balint* and *Dotterweich* reasoning, the government contended that all guns are dangerous devices such that all gun owners are on notice that they must determine whether their weapons fall within the National Firearms Act requiring registration.   *Staples*, 511 U.S. at 609 (Appx. pp. 467-468).   The Supreme Court rejected this "glossing" because the government's argument ignored "the particular care . . . taken to avoid construing a statute to dispense with *mens rea* where doing so would 'criminalize a broad range of apparently innocent conduct.'" *Id.* at 610 (quoting *Liparota*, 471 U.S. at 426) (Appx. p. 468).   In general, guns are not "deleterious devices or products or obnoxious waste materials." *Id.* at 610 (quotation omitted) (Appx. p. 468).   Dangerous items can become commonplace.   Owning those

items cannot be said to put the owners on sufficient notice of the likelihood of regulation so as not to require knowledge for federal prosecution. *Id.* at 612 (Appx. p. 469).

The Supreme Court stresses the fact that guns are highly regulated does not "in itself . . . place gun ownership" within the reach of the *Balint* decision. *Id.* at 613 (Appx. p. 470). If the amount of regulation of an item governed whether the government must prove knowledge, the Supreme Court indicated it would "reach some untoward results," such as criminalizing the operation of a vehicle without a properly functioning emission control system. *Id.* at 614 (Appx. p. 471). It would be pause worthy that Congress "intended a prison term to apply to a car owner whose vehicle emissions levels, wholly unbeknownst to him, began to exceed legal limits between regular inspection dates." *Id.* Finally, the Supreme Court discussed the potentially harsh penalty attached to the statutory violation and how such a hefty fine and term of imprisonment militated against dispensing with the *mens rea* requirement.

## 2.   Ninth Circuit Decisions.

The Ninth Circuit held that the "knowingly" *mens rea* under the Clean Water Act does not refer to the legal violation. Rather, it applied only to engaging in conduct that resulted in a permit violation. *See United States v. Weitzenhoff*, 35 F.3d 1275, 1284 (9th Cir. 1993) (Appx. pp. 548-578). In so holding, the *Weitzenhoff* court agreed that the government need only prove that the defendant was aware he was

discharging the pollutants in question, not that he was violating the terms of a statute or permit.  In other words, just as the jury was instructed in Weitzenhoff case, "the government [wa]s not required to prove that the defendant knew that his act or omissions were unlawful."  *Id.* at 1283 (Appx. p. 559).

The *Weitzenhoff* court reasoned that the Clean Water Act was a public welfare statute.  *Id.* at 1284 (Appx. p. 560).  As such, the reasoning of *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558 (1971) applied: "[W]here . . . dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation."  *Id.* (quoting *International Minerals*, 402 U.S. at 565).  Weitzenhoff, on 40 separate occasions, instructed employees to dispose of sewage treatment sludge directly into the ocean off of East Honolulu.  *Id.* at 1281-82.

The *Weitzenhoff* court also rejected the contention that the Supreme Court's decisions in *Ratzlaf v. United States*, 510 U.S. 135 (1994) and *Staples* applied (Appx. p. 562).  The *Staples* decision did not concern the disposal of obnoxious waste materials that put the defendant on notice his actions stood "in responsible relation to a public danger."  *Weitzenhoff*, 35 F.3d at 1286 (*quoting Dotterweich*, 320 U.S. at 277).  And the *Ratzlaf* decision was ruled inapplicable because (1) it concerned money structuring provisions that a reasonable person would not know were subject

to strict public regulation, and (2) the structuring offense applied to all persons with more than $10,000 who could be involved in structuring for innocent reasons. (Appx. p. 562). Since people's actions were closely regulated because they were discharging waste materials that affected public health, knowledge of the operating permit was properly imputed under *International Minerals* to Weitzenhoff and defendants like him. *Weitzenhoff*, 35 F.d at 1285 (Appx. p. 561). The Ninth Circuit relied on *Weitzenhoff* in *United States v. Hanousek*, 176 F.3d 1116 (9th Cir. 1999) (Appx. pp. 605-617). The defendant in *Hanousek* managed a special project where an employee punctured a pipeline while using a backhoe to push rocks. Up to 5000 gallons of oil discharged into the Skagway River. *Hanousek*, 176 F.3d at 1119 (Appx. p. 611).

The defendant was charged with "negligently discharging a harmful quantity of oil into a navigable water of the United States, in violation of the Clean Water Act." *Id.* He argued that the government must prove criminal negligence on his part. *Id.* 1120. The Court rejected the argument, indicating "[i]n light of our holding in *Weitzenhoff* that the criminal provisions fo the Clean Water Act constitute public welfare legislation, and the fact that a public welfare statute may impose criminal penalties for ordinary negligent conduct without offending due process," 33 U.S.C. §1319(c)(1)(A) did not violate due process by permitting criminal penalties for ordinary negligent conduct (Appx. p. 618).

The *Weitzenhoff* and *Hanousek* decisions appear to establish the law in the Ninth Circuit as it concerns the Clean Water Act and the *mens rea* requirement. The following discussion, however, details why the *Weitzenhoff* and *Hanousek* decisions are inapposite and why *Staples* applies.

### 3.    Why the Ninth Circuit Decisions don't apply and *Staples* does.

When it comes to the jurisdictional element the Clean Water Act is not a public welfare offense. Furthermore the *Weitzenhoff* and *Hanousek* decisions failed to account for the many limitations placed on public welfare offenses and, therefore, simply don't apply here.

"The language of the Clean Water Act is less than pellucid." *United States v. Ahmad*, 101 F.3d 386, 389 (5th Cir. 1996) (Appx. p. 624). The decisions in *Weitzenhoff* and *Hanousek* focused too heavily on the fact that the Clean Water Act regulates harmful or injurious materials. That factor is not dispositive because "[e]ven dangerous items can, in some cases, be so commonplace and generally available that [they] . . . would not . . . alert individuals to the likelihood of strict regulation." *Staples*, 511 U.S. at 611. And this is particularly relevant here because in this case the allegations involve dredge and fill material, which are "pollutants" only in the most technical sense. Also the issue here is not the nature of the pollutants but rather whether defendant knew his conduct was subject to regulation by the federal sovereign.

Moreover, Justices Thomas and O'Connor, who dissented from the denial of the writ of certiorari filed in the *Hanousek* case, stress that the "Court of Appeals" invoke the narrow [public welfare] doctrine too readily." *Hanousek v. United States*, 528 U.S. 1102, 120 S. Ct. 860, 862 (2000) (Appx. pp. 628-630).  Justice Thomas opined:

> [I]t is erroneous to rely, even in small part, on the notion that the CWA is a public welfare statute. . . .  Although provisions of the CWA regulate certain dangerous substances, this case [*Hanousek*] illustrates that the CWA also imposes criminal liability for persons using standard equipment to engage in a broad range of ordinary industrial and commercial activities.

> *Hanousek*, 120 S. Ct. at 860 (Appx. p. 629).

As discussed in *Staples*, offenses that require no *mens rea* are generally disfavored and public welfare offenses apply in limited circumstances.  *See United States v. United States Gypsum*, 438 U.S. 422, 437 (1978) (Appx. pp. 631-664).  Typically, courts have recognized public welfare offenses in cases involving statutes that regulate potentially harmful or injurious items.  *See, e.g., International Minerals & Chemical Corp.*, 402 U.S. at 564-65 (Appx. pp. 583-584).  The public welfare exception does not extend to offenses derived from common law.  *See United States Gypsum*, 438 U.S. at 437 (Appx. p. 624); *Morissette*, 342 U.S. at 255, 260-62 (Appx. pp. 440-441).  In addition public welfare offenses generally are ones "where the penalty is relatively small, [and] where conviction does not gravely besmirch." *Freed*, 401 U.S. at 613 n.4 (Appx. pp. 545-546), (Brennan, J., concurring) (quoting

*Holdridge v. United States*, 282 F.2d 302, 310 (8th Cir. 1960) (Blackmun, J.)); *see also Staples*, 511 U.S. at 616 (Appx. pp. 471-472); *Morissette*, 342 U.S. at 256 (Appx. pp. 437-438).

Here, the Clean Water Act includes two different and express *mens rea* requirements. *See* 33 U.S.C. 1319(c). The penalties created are far from minor, including up to 15 years imprisonment and $250,000 in fines. Unlike the defendants' actions in *Weitzenhoff* and *Hanousek*, Mr. Robertson did not knowingly place an obnoxious material into the navigable waters of the United States. He dug some ponds. And, unlike the defendants' actions in *Balint* or *Dotterweich*, Mr. Robertson would not have an awareness that what he was doing was a criminal violation within federal jurisdiction. Hence, even if this Court does not agree that the Ninth Circuit court decisions were incorrect, they still do not apply because Mr. Robertson's essential contention here is that during trial the government must prove beyond a reasonable doubt that he knew he was impacting "the waters of the United States" when he was digging his ponds. In other words because *Weitzenhoff* and *Hanousek* do not address the government's obligation to prove that defendant knew his conduct was impacting "the waters of the United States" those decisions are factually inapposite.

More to the point, the Supreme Court's decisions in *Staples* and *Ratzlaf* apply. Here, the government should be required to prove that Mr. Robertson knew when he dug the hole he was affecting property that required pre-approved federal involvement.  Much like the government was required to prove the defendant in *Staples* knew when he fired the gun that he was firing a gun of the type that required federal registration.  In this case it took the government two different attempts and a total of 70 pages of technical assessment to conduct its jurisdictional determination of Mr. Robertson's property.  (Appx. pp. 677-737).  How must a reasonable person like Mr. Robertson be presumed to know that he was subject to such strict regulation where the actions he took were for innocent reasons?  *See Ratzlaf*, 510 U.S. at 142-48.  (Appx. pp. 591-594).  The government should not be able to readily claim the public welfare exception because such construction of the Clean Water Act jurisdiction criminalizes a broad range of innocent conduct.  Digging a pond is not dangerous and the fact that the EPA regulates actions that might affect the navigable waters of the United States does not equate to a presumption that all who dig know the jurisdictional requirements.  This is especially true where, again, it takes the EPA specialists months of work and pages of reports and assessments to determine its own jurisdiction.

In the *Rapanos* plurality decision Justice Scalia, citing a GAO Report, indicates that those who administer the Clean Water Act deliberately leave the definitions used to make jurisdictional determinations "vague" so they can be defined broadly and indiscriminately applied.  (*See Rapanos*, 547 U.S. at 727-728 (Appx. p. 132)).  This is exactly what's happening here.  After the ponds were dug the government conducted its jurisdictional "assessments" using vague standards that nobody understands.

**(F)** ***The government's "waters of the United States" proposed jury instruction (Appx. pp. 19-21) is wrong and neither can nor should be given for multiple reasons.***

Given the discussion thus far it should be clear at this point that after *Rapanos* what constitutes "the waters of the United States" is a veritable morass of confusion:

- No courts hold that the plurality alone supplies the governing test;

- some courts hold that Justice Kennedy's test alone does supply the test;

- and still others hold that either the plurality or Justice Kennedy's test will satisfy this crucial jurisdictional component.

Just to be clear, and for sake of emphasis, defendant's first position *vis-a-vis* this confusion is that whether he considers the statutory text of the Clean Water Act or the case law that interprets it (or both) due process notice of what constitutes "the waters of the United States" is lacking.  In other words defendant argues that the law is both facially unconstitutional *and* unconstitutional as applied to him.  *See e.g. United States v. Lanier*, 520 U.S. 259, 265-267 (1997) (listing three related

manifestations of the fair warning requirement).

Accordingly the Court should dismiss Counts I and III of the Indictment for lack of jurisdiction because there is no settled, understandable definition of "waters of the United States."  The Clean Water Act and its criminal penalties are simply unenforceable and can't intelligently be applied because defendant has been denied due process notice and neither the EPA/Corps or the Courts has developed or applied a consistent definition of the term "waters of the United States."  *See United States v. Barrigan-Mendoza*, 174 F.3d 1024, 1027 (9th Cir. 1999) (party can challenge court's jurisdiction at anytime) (Appx. p. 742).

On the other hand if the Court decides not to dismiss on defendant's argument that there is no agreed workable definition of what constitutes "the waters of the United States" defendant's alternate and second position is that the jury can only be instructed under Justice Kennedy's "significant nexus" test set forth in his *concurring* opinion supporting the judgment in *Rapanos*.  Under that test, and any derivative jury instruction, the jury must be told two things, to which the government will undoubtedly object.  First, that a "mere hydrologic connection" will not necessarily be enough to satisfy the "significant nexus" test.  126 S.Ct. at 2250-51 (Appx. pp. 161-162).  And second that the government must show beyond a reasonable doubt the possible chemical, physical or biological effect that his pond digging had on "the waters of the United States."  *See e.g. United States v. Robison*, 505 F.3d 1208, 1222-

1223 (11th Cir. 2007) (Appx. pp. 319-320) (stating *inter alia* that government never presented evidence of chemical, physical or biological connection or any evidence of actual harm to waters of the United States).

Moreover, carried to its logical conclusion in the context of the instant *criminal* case this Court is required under the rule of lenity to instruct the jury *only* on the "significant nexus" test set forth by Justice Kennedy in *Rapanos*. This follows for two interdependent reasons. First because as the Seventh Circuit found in *United States v. Gerke Excavating, Inc.*, 464 F.3d 723-724-725 (2006) (Appx. pp. 302-304) that Justice Kennedy's test is narrower than the test set forth by Justice Scalia in the plurality decision in the sense that Justice Kennedy's "significant nexus" standard for testing the scope of federal authority over wetlands imposes greater restrictions on that federal authority. In plain English: it's harder for the government to prove its case under the "significant nexus" test because the government must show a chemical, biological or physical connection amongst the waters in issue. Furthermore even if it makes this initial showing the government must go on to prove that the defendant's alleged discharge of pollutants had some negative impact on "the waters of the United States", which in this case the government clearly cannot do, since the whole area under discussion here was, is and will continue to be a mining industry

environmental disaster for years and years to come.[2]

The second point that's important here is that since Justice Kennedy's "significant nexus" standard is tougher on the government it must be applied as the relevant test as a matter of lenity.  Under the lenity concept any ambiguity in a criminal statute must be resolved in defendant's favor.  (*See Staples*, 511 U.S. at 619, n. 17; Appx. pp. 473-474).  As relevant here after the Supreme Court's decision in *Rapanos* what constitutes "the waters of the United States" is grievously ambiguous.  That being the case since Justice Kennedy's *Rapanos* view represents the more difficult test for the government to meet that standard correspondingly becomes the one that is more defendant friendly.  Therefore under the lenity rule the jury can only be instructed on the "substantial nexus" standard.

---

[2]The EPA has determined that the entire Cataract Creek Watershed is an environmental disaster due to the Crystal Mine (Appx. pp. 748-750). We ask that this EPA finding be judicially noticed under Federal Rule of Evidence, Rule 201. *See Sierra Club v. U.S. Environmental Protection Agency*, 762 F.3d 971, 975, n. 1 (9th Cir. 2014) (Appx. p. 755) Our point being that the government could never prove under the substantial nexus test that defendant's incidental movement of dredge and fill material impacted an already declared watershed disaster.

## IV.   <u>CONCLUSION</u>

WHEREFORE, we would appreciate the Court considering these things during

the trial in this case.

RESPECTFULLY SUBMITTED September 18, 2015.

\_\_/s/ Michael Donahoe_____

MICHAEL DONAHOE
Senior Litigator
Counsel for Defendant

## V.  CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on September 18, 2015, a copy of the foregoing document

was served on the following persons by the following means:

__1__       CM-ECF

_____      Hand Delivery

_____      Mail

_____      Overnight Delivery Service

1.    CLERK, UNITED STATES DISTRICT COURT

1.    Eric E. Nelson
      Special Assistant U.S. Attorney
      901 Front Street, Suite 1100
      Helena, MT 59626-1100

1.    Bryan Whittaker
      Assistant U.S. Attorney
      901 Front Street, Suite 1100
      Helena, MT 59626-1100
          Counsel for the United States

/s/ Michael Donahoe
FEDERAL DEFENDERS OF MONTANA