MICHAEL DONAHOE
Senior Litigator
Federal Defenders of Montana
Helena Branch Office
50 West 14th Street, Suite 300
Helena, Montana 59601
Phone: (406) 449-8381
Fax: (406) 449-5651
      Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>JOSEPH DAVID ROBERTSON,<br><br>        Defendant. | **CR 15-07-H-SEH**<br><br>BRIEF IN SUPPORT OF DEFENDANT'S SECOND MOTION TO DISMISS COUNTS I AND III OF THE INDICTMENT FOR LACK OF JURISDICTION AND REQUEST FOR POSTPONEMENT OF THE SENTENCING HEARING AND ORAL ARGUMENT ON THIS MOTION |

## INTRODUCTION

Defendant has filed a motion to dismiss counts I and III of the Indictment (ECF

No. 225). This brief supports that motion.

## BACKGROUND

This is a case brought, in part, under the Clean Water Act where the government alleged that defendant contaminated "waters of the United States." The matter has been tried twice to two different juries in two different Montana cities: Helena, where the jury was unable to reach a verdict and in Missoula where the jury convicted. From the beginning the parties have debated the meaning of the statutory phrase "waters of the United States." Without an exhaustive consideration of the various motions and briefs in the record which address this question suffice it to say that lack of clarity in the law has been defendant's primary defense. *See e.g. United States v. Lewis*, 368 F.3d 1102, 1104-1106 (explaining the fair warning claim may protect a defendant from criminal liability). At both of defendant's trials the Court resolved to employ the "significant nexus" test articulated by Justice Kennedy in *Rapanos v. United States*, 575 U.S. 715 (2006). (*See United States v. Robertson*, Opinion and Order (ECF No. 107), 2015 WL 7720480 *2, (November 30, 2015), *noting that the Ninth Circuit and others have adopted the "significant nexus" test after applying narrowest grounds analysis required under Marks v. United States*, 430 U.S. 188 (1977)).

## CONTENTION OF THIS MOTION

On June 13, 2016 the Ninth Circuit decided a case *en banc* styled as *United States v. Davis*, _____ F.3d _____, 2016 WL 3245043. There, the Court basically reconfigures the manner in which the "narrowest grounds" test from *Marks v. United States*, 430 U.S. 188 (1977) is to be applied. Wherefore it is defendant's contention here that post *Davis* the controlling test of the *Rapanos* decision is no longer Justice Kennedy's "significant nexus" test. Accordingly defendant contends that when properly analyzed under *Davis* his convictions on Counts I and III must be vacated and dismissed for lack of jurisdiction." *Also see United States v. Tucor International, Inc.*, 189 F.3d 834, 836 n. 1 (9th Cir. 1999) (setting forth egregious legal errors test for writ of error of coram nobis).

## RELIEF REQUESTED

The defense requests that the Court postpone the sentencing hearing currently scheduled in this matter for July 20, 2016 in Missoula; and further that once briefing is complete that the Court entertain oral argument on this motion, at a time convenient for the Court, to be followed by a ruling dismissing Counts I and III with prejudice.

<u>ARGUMENTS</u>

***The Ninth Circuit's Recent En Banc Decision in United States v. Davis, ___ F.3d ____ , 2016 WL 3245043 (June 13, 2016) Re-Writes How Marks v. United States, 430 U.S. 188 (1977) Is To Be Applied In The Ninth Circuit***

In *Davis* the Court addressed which "reasoning", if any, was employed by five Supreme Court Justices in its fractured decision styled as *Freeman v. United States*, 546 U.S. 522 (2011). *Freeman* attempted to determine whether an individual sentenced under a plea agreement calling for a specific agreed upon sentence could obtain relief under 18 U.S.C. §3582(c)(2) where his drug guideline was retroactively lowered by the Sentencing Commission. Four Justices in the *Freeman* plurality said "yes" such defendants did qualify. Four Justices said "no" such defendants did not qualify. And one Justice (Sotomayor) took a middle position stating that under limited circumstances such defendants might qualify. When originally confronted with the question the Ninth Circuit said that Justice Sotomayor's view in *Freeman* was the controlling test. *See United States v. Austin*, 676 F.3d 924 (9th Cir. 2012) *overruled by Davis*, *supra*.

*Davis* is important in this case for two reasons. First because *Davis* recognizes that the *Marks* narrowest grounds test can be determined under either of two mutually exclusive analytical paradigms: "one focusing on the ultimate *results*" *Davis*, 2016 WL 3245043 at *5 (emphasis original); or, second, under a reasoning-based

approach.  *Id*.  Post *Davis* the new test in the Ninth Circuit to be applied to the fractured Supreme Court decision is as follows:

> A fractured Supreme Court decision should only bind the federal courts of appeal when a majority of the Justices agree upon a single underlying rationale and one opinion can reasonably be described as a logical subset of the other. When no single rationale commands a majority of the Court, only the specific result is binding on lower federal courts.

*Davis*, 2016 WL 3245043 at *5

In applying this new controlling test it is also important to note from the outset that the *Davis en banc* court "assume[s] but [does] not decide that dissenting opinions may be considered in a *Marks* analysis." *Davis, supra*, at *8.[1]

### The Davis Case Requires A Re-Evaluation Of The Marks Analysis Vis-A-Vis Rapanos.

When this Court analyzed this issue last year in its November 30, 2015 Opinion and Order (ECF No. 107) (footnotes omitted) it ruled:

---

[1]In the context of defendant's lack of fair warning defense this point is especially important since, even after *Davis,* the manner in which the *Marks* analysis is carried out remains unsettled.  Given that it is still unclear whether dissenting opinions are in fact to be included in a *Marks* analysis brings into sharp relief how counter-intuitive it would be for a citizen to look to a dissenting opinion for Due Process notice of the governing rule or standard.

When a majority of the Supreme Court agrees only on the outcome of a case and not on the grounds for that outcome, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States,* 430 U.S. 188, 193 (1977) (internal quotations omitted). Of those circuit courts that have considered *Rapanos,* many have concluded that Justice Kennedy's opinion constitutes the narrowest holding, including the Ninth Circuit. *N Cal. River Watch v. City of Healdsburg,* 496 F.3d 993, 999-1000 (9th Cir. 2007). Accordingly, Justice Kennedy's concurring "significant nexus test" controls in this case. *See Moses,* 496 F.3d at 990 (applying Justice Kennedy's opinion as the controlling rule of law in a criminal Clean Water Act action). *Rapanos* has been the law in this area for almost a decade, and the Ninth Circuit has applied the standard outlined in Justice Kennedy's concurrence in criminal cases on more than one occasion. *See id.; United States v. Vierstra,* 492 Fed. Appx. 738, 740 (9th Cir. 2012) (unpublished).

(ECF No. 107 at pages 5-6)

To deconstruct this ruling in light of *Davis* we begin with the Court's citation to *Northern California River Watch v. City of Healdsburg*, 496 F.3d 993, 999-1000 (9th Cir. 2007). Although the defense has made this point before it is important to emphasize that *Northern California River Watch* resulted in two opinions. The one just cited from 2007 (496 F.3d 993) and its predecessor, which is published at 457 F.3d 1023 (9th Cir. 2006). A petition for rehearing came in between these two opinions which took almost a year to resolve. And important to our purposes here it was the *Marks* analysis which changed in between the two decisions.

Careful comparison of the *Northern California River Watch* opinions reveals that the 2007 *Northern California River Watch* Panel cites the Seventh Circuit's decision in *United States v. Gerke*, 464 F.3d 723, 724 (7th Cir. 2006), which cite is absent from the earlier 2006 *Northern California River Watch* opinion. Moreover, by citing to *Gerke* the post rehearing *Northern California River Watch* opinion adopts the Seventh Circuit's analysis of the *Marks* test in *Gerke* without discussion, which this motion contends does not comport with the test fashioned by the recent *Davis en banc* court. *See Northern California River Watch*, 496 F.3d at 993, 999-1000 (9th Cir. 2007).

Under *Gerke* Justice Kennedy's test is determined to be the controlling standard because it will result in the most instances supporting federal jurisdiction:

> [Justice Kennedy's] test is narrower (*so far as reining in federal authority is concerned*) than the plurality's in most cases, though not in all because Justice Kennedy also said that 'by saying the Act covers wetlands (however remote) possessing a surface-water connection with a continuously flowing stream (however small), the plurality's reading would permit applications of the statute as far from traditional federal authority as are the waters it deems beyond the statute's reach.'
>
> *Gerke, supra*, 464 F.3d at 724, 725 (quoting *Rapanos*, 126 S.Ct. at 2234 n. 15 & 2246) (emphasis added).

Providing examples *Gerke* says that where Justice Kennedy would find a "significant nexus" the four dissenters in *Rapanos* would also find jurisdiction.

The *Gerke* court concludes that in most cases where Justice Kennedy concludes that there is no federal jurisdiction, such a result would obtain because Justice Kennedy would align in those instances with the four Justices in the plurality. However, *Gerke* recognizes that the *Rapanos* dissenters and the plurality could join to defeat Justice Kennedy where he might vote against federal jurisdiction. But more important *Gerke* acknowledges that Justice Kennedy categorically rejects two qualifications that the plurality imposes when determining federal authority over wetlands under the Clean Water Act. First, the plurality's permanent standing water or continuous flow requirement for at least a period of some months. And, second, is the plurality's need for the government to show a continuous surface connection to bodies of water that are waters of the United States in their own right. *See Gerke*, *supra*, 464 F.3d at 724 *citing Rapanos*, 126 S.Ct. at 2242.

The Ninth Circuit's understanding of narrowest ground or narrowest opinion after *Davis* does not square with the *Gerke* Panel's *per curiam Marks* analysis. As *Gerke* concedes in some cases where there is a small surface water connection the plurality's jurisdictional test could be satisfied; however Justice Kennedy's significant nexus test might not be. In such a situation, if Justice Kennedy's test were deemed controlling and supportive of finding <u>no jurisdiction</u> (as held by the Seventh and Ninth Circuits pre-*Davis*), the outcome would be a finding of no federal

jurisdiction, despite the fact that four members of the plurality and the four dissenters could agree that the Clean Water Act should extend to such a situation.  In other words the *Gerke* hypotheticals, at a minimum, confirm that the plurality and Justice Kennedy reason differently when it comes to determining Clean Water Act jurisdiction.  *Also see United States v. Epps*, 707 F.3d 337, 348 (D.C. Cir. 2013) ("*Marks* applies when, for example, the concurrence posits a narrow test to which the plurality must *necessarily agree as a logical consequence* of its own, broader position") *quoting King v. Palmer*, 950 F.2d 771, 782 (D.C. Cir. 1991) (*en banc*), *internal quotes omitted*.  Moreover, this approach was first embraced by Judge Berzon while sitting on the original *Davis* panel in her *concurring* opinion.  *United States v. Davis*, 776 F.3d 1088, 1091-1092 (9th Cir. 2015) *overruled* by *United States v. Davis*, ___ F.3d ___, 2016 WL 3245043 (June 13, 2016).

In *Rapanos* the plurality's reasoning centers on the plain meaning of the statutory text and on physical characteristics of the land including location, water flow and actual contiguousness.  Whereas Justices Kennedy discounts these factors in favor of a test, which in its most expansive iteration, could serve to override totally all of the physical, mechanical type characteristics upon which the plurality relies so heavily.  And unlike the plurality, Justice Kennedy articulates a rationale or reasoning that hews closely to what he conceives are the legislative purposes of the Clean Water

Act.   Something the plurality vigorously disputes as a basis for statutory interpretation. This shows that the approach that the *Gerke* Panel employed (and by extension the Ninth Circuit without comment) is not a "reasoning" based approach, as the Ninth Circuit's recent *Davis* decision requires.   In reality *Gerke* is simply a tally sheet calculated to endorse all the possible permutations of *Rapanos* which expansively *result* in the existence of federal jurisdiction under the Clean Water Act regardless of reasoning, which the *en banc Davis* decision forbids:

> Thus, any conclusion that Justice Kennedy reaches in favor of federal authority over wetlands in a future case will command the support of five Justices (himself plus the four dissenters), and in *most* cases in which he concludes that there is no federal authority he will command five votes (himself plus the four Justices in the *Rapanos* plurality), the exception being a case in which he would vote against federal authority only to be outvoted 8–to–1 (the four dissenting Justices plus the members of the *Rapanos* plurality) because there was a slight surface hydrological connection. The plurality's insistence that the issue of federal authority be governed by strict rules will on occasion align the Justices in the plurality with the *Rapanos* dissenters when the balancing approach of Justice Kennedy favors the landowner. But that will be a rare case, so as a practical matter the Kennedy concurrence is the least common denominator (always, when his view favors federal authority).

*Gerke*, 464 F.3d at 725 (emphasis original)

This result oriented approach which *Gerke* advocates, and the Ninth Circuit adopted in 2007 in *Northern California River Watch* without discussion, has been overruled by *Davis*.

*Application Of The Davis En Banc Decision And Other Interpretative Tools To Rapanos Requires That This Court Either Adopt The Plurality Opinion In Rapanos As The Controlling Rule Or Find That No Single Rational Commanded A Majority Of The Rapanos Court.*

It is an established precept of federal law that federal courts are courts of limited jurisdiction possessing only the power authorized by the constitution or statute.  A power that is not to be expanded by judicial decree.  *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994).  After the Ninth Circuit's decision in *Davis* the only plausible *reasoning* based "narrowest ground" in the *Rapanos* decision would be the position of the plurality because that position restricts government authority and also because it avoids the constitutional issue of how far Congress can go in asserting jurisdiction under the Commerce Clause.  *Rapanos*, 126 S.Ct. at 2224 (plurality opinion). *See e.g. Clark v. Martinez*, 543 U.S. 371, 380 (2005) (when there are two plausible statutory constructions and one would raise constitutional problems the other should prevail).

Also in *United States v. Lanier*, 520 U.S. 259 (1997) the Supreme Court's detailed analysis of the "three related manifestations of the fair warning requirement" are important here.  *Id*. at 266.  First, is the vagueness component which forbids enforcement of laws that lack fair warning in language the common world can understand.  Second, is the rule of lenity which promotes fair warning by resolving

ambiguous statutes in favor of the defendant when two plausible readings of the law are possible.   And third is the manifestation of the fair warning requirement concerning judicial gloss, which although permitted to clarify an otherwise uncertain statute, cannot be accomplished by novel construction.   In each of these iterations "the touchstone is whether the statute, either standing alone *or as construed*, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, *supra*, 520 U.S. at 267 (emphasis added).

Under *Marks v. United States*, 430 U.S. 188, 197 (1977) any constitutional principle enunciated by the Ninth Circuit's *en banc Davis* decision must be applied to Mr. Robertson's case; and how to conduct a proper *Marks* analysis controls the outcome of what constitutes a "water of the United States" under the Clean Water Act, in order to furnish Due Process fair warning notice.   After *Davis* neither this Court, nor any other federal court within the Ninth Circuit, is authorized to conduct a *Marks* analysis based on *either* "reasoning" or "results."   As of June 13, 2016, the date of publication of the *Davis* decision, a proper *Marks* analysis only involves a "reasoning-based" approach.   *United States v. Davis,* ___ F.3d ___, 2016 WL 3245043 at *5.

Furthermore the *Rapanos* plurality and concurring opinions do not share common reasoning whereby one analysis is a logical subset of the other; or if they do it can only be the more restrictive plurality test.  Wherefore Mr. Robertson contends that, even at this writing, he has not been afforded fair warning Due Process of the meaning of the term "waters of the United States" as set forth in the Clean Water Act because no court in this circuit has conducted an exclusive "reasoning-based" *Marks* analysis of the Supreme Court's splintered *Rapanos* decision.

Adopting the view of plurality after *Davis* is also compelled by the Due Process fair warning requirement itself.  Since this is a criminal case other special interpretative rules apply designed to insure advantage to the defense when the statute under consideration is ambiguous.  As relevant here the phrase "waters of the United States" is at a minimum ambiguous and the plurality's interpretation of the phrase is more than plausible.  Thus as between Justice Scalia's test and Justice Kennedy's test the tie must go to the defendant.  This follows because the rule of lenity "requires that ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."  *United States v. Gradwell*, 243 U.S. 476, 485 (1917); *McBoyle v. United States*, 283 U.S. 25, 27 (1931); *United States v. Bass*, 404 U.S. 336, 347-349 (1971). *United States v. Santos*, 553 U.S. 507, 514 (2008) sums it up well:

This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead.

*Santos*, 553 U.S. at 514

From a reasoning based perspective it would appear that even Justice Kennedy at least agrees that "[w]hen the [government] seeks to regulate wetlands [actually] adjacent to navigable-in-fact waters, it may rely on [actual] adjacency to establish its jurisdiction" *Rapanos*, 126 S.Ct. at 2249 (concurring opinion). Which largely tracks the narrow reasoning of the plurality by limiting Clean Water Act jurisdiction over wetlands to those that are contiguous-in-fact to already identifiable navigable United States waters. Hence the only possible common denominator of "reasoning" as between the plurality opinion and the concurring opinion in *Rapanos* after *Davis*, if any, is the actual adjacency of the wetland to a navigable-in-fact water. This however was not the test that was relied on by the Court or the government at either of defendant's trials. Nor is this a test that has been adopted by *any* court in the nation in a published decision as far as we know; which is an extremely relevant point in determining whether defendant, or others situated like him, had fair notice warning of what the Clean Water Act requires.

If this Court finds that the plurality decision in *Rapanos* is not the controlling rule after *Davis* the only other option would be to find that no single rationale commanded a majority of the *Rapanos* court. Either way, whether the Court finds that the plurality furnishes the controlling rule; or whether no single rationale commanded a majority, the outcome is the same: defendant's convictions on Counts I and III should be vacated and dismissed with prejudice. Because after *Davis* it is clear that the Ninth Circuit's 2007 decision in *Northern California River Watch* erroneously adopted, without discussion, the *Gerke* rule which is a result oriented test forbidden under *Davis*. Careful analysis (post *Davis*) reveals significant cracks in the assumptions that led the Court to deny acquittal on Counts I and III on the ground that the law defining "waters of the United States" is unintelligible.

***Proper Application Of The Supreme Court's Decision In Marks v. United States After United States v. Davis (en banc) Yields the Ineluctable Conclusion That Mr. Robertson's Fair Warning Due Process Defense Ought To Be Recognized By Granting His Rule 29(c) Motion From The First Trial Or Some Other Legal Ruling That The Court Deems Appropriate***.

It is important to consider that *Marks v. United States*, 430 U.S. 188 (1977) addressed a situation similar to the one presented here where Due Process notice was at issue. *Marks* concerned three decisions of the Court involving obscenity laws: *Roth* decided in 1957; *Memoirs* decided in 1966; and *Miller* decided in 1973. *Memoirs* was the flashpoint because it posed a narrower test for obscenity, "utterly

without redeeming social value" than did *Miller*, "whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value." 430 U.S. at 190-191. *Roth* on the other hand posed a test that did not differ significantly from *Miller* so the question arose whether the defendants in *Marks* should be held accountable under *Memoirs*, which was narrower and to their advantage; or under a *Miller/Roth* standard that was more prosecution friendly.

In order to answer this question however the Supreme Court had to confront the splintered nature of the *Memoirs* decision, inasmuch as five justices agreed on the result in *Memoirs* but on different grounds. In this connection the *Marks* court first noted that the court of appeals had concluded that *Memoirs* never became law, because it failed to command the assent of more than three Justices at any one time. Holding this reasoning to be "faulty" however the *Marks* court quoted *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15 (1976) ruling that when a fragmented court decides a case with no single supporting rationale "the holding of the Court may be viewed as that position taken by those members who concurred in the judgment on the narrowest grounds . . ."

Thus the "narrowest grounds" test emerges from *Gregg*, which in turn discusses *Furman v. Georgia*, 408 U.S. 238 (1972). In *Furman* the Justices who concluded that capital punishment was *per se* unconstitutional realized a broad ruling.

But the other Justices in *Furman* who found the death penalty unconstitutional only as applied reached a narrower holding.  Therefore the ruling of the latter Justices was determined to be a subset of the former, and broader, ruling of the other *Furman* Justices, which in turn ultimately represented the holding of the Court.  Likewise in *Memoirs*, which was at issue in *Marks*, the strict view of the First Amendment would always require protection of speech even if obscene; whereas under the narrower view of the three other Justices in *Memoirs* only non-obscene speech would enjoy protection.  As these decisions show – and as the Ninth Circuit's (*en banc*) *Davis* decision confirms – this understanding of "narrowest grounds" as set forth in *Marks* cannot apply easily to *Rapanos*.  At best the *Rapanos* plurality should be considered the narrowest holding and therefore the due process notice that the *Rapanos* decision provides.  Otherwise "only the specific result [of *Rapanos*] is binding on [the] lower federal courts" *United States v. Davis*, ___ F.3d ___, 2016 WL 3245043 at *5.

The Ninth Circuit's *en banc* decision in *Davis* requires that this Court conduct a "reasoning-based approach to applying *Marks*."  *Davis*, 2016 WL 3245043 at *5.  No decision of this Court, the Ninth Circuit, or any other circuit court of appeals has applied such an analysis to *Rapanos*.  Unless and until this analysis is conducted defendant has had *no* fair warning Due Process notice of what the law is and under *United States v. Lanier,* 520 U.S. 259 (1997) and *United States v. Lewis*, 368 F.3d

1102 (9th Cir. 2004) Mr. Robertson's fair warning defense ought to be recognized and approved.

CONCLUSION

WHEREFORE, defendant's convictions on Counts I and III of the Indictment ought to be vacated and be dismissed with prejudice.

RESPECTFULLY SUBMITTED July 1, 2016.


   /s/ Michael Donahoe
MICHAEL DONAHOE
Senior Litigator
Counsel for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief is in compliance with Local Rule 7.1(d)(2)(as amended).  The brief's line spacing is double spaced, and is proportionately spaced, with a 14 point font size and contains less than 6,500 words. (Total number of words: 3,935 excluding tables and certificates).

DATED July 1, 2016.

By: /s/ Michael Donahoe
    Michael Donahoe
    Federal Defenders of Montana
    Counsel for Defendant

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)


I hereby certify that on July 1, 2016, a copy of the foregoing document was

served on the following persons by the following means:

___1___       CM-ECF

_____       Mail


1.       CLERK, UNITED STATES DISTRICT COURT

1.       Bryan Whittaker
         Assistant U.S. Attorney
         901 Front Street, Suite 1100
         Helena, MT 59626
                  Counsel for the United States of America


         __/s/ Michael Donahoe_____
         MICHAEL DONAHOE
         Senior Litigator