Michael Donahoe
Senior Litigator
FEDERAL DEFENDERS OF MONTANA
50 West 14th Street, Suite 300
Helena, MT 59601
(406) 449-8381
(406) 449-5651(Facsimile)
Attorney for Defendant

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br><br>vs.<br><br>JOSEPH DAVID ROBERTSON,<br>　　　　　Defendant. | CR 15-07-H-DWM<br><br>**DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM** |

## I.  INTRODUCTION

COMES NOW defendant and in conformity with the Court's scheduling order (ECF #205) offers the following response to the government's sentencing memorandum (Doc. #229).

## II. RESPONSE

The government's arguments for a 10 point increase in defendant's offense level ought to be rejected. (Government's Sentencing Memorandum at page 2). There was no continuous, repetitive discharge warranting a 6 point enhancement; nor did defendant know he needed a permit given the lack of clarity in the law therefore that 4 point upward adjustment is not warranted either.

Nor is an obstruction of justice enhancement of 2 points upward warranted (Government's Sentencing Memorandum at pages 2-3). Likewise the clean up enhancement requested by the government ought to be rejected. *Id.* There is nothing to clean up. Reclamation, to the extent it is warranted, is not "clean up." There was no "contamination." USSG §2Q1.3(b)(3) App. Note 6. Also as noted in the EPA's study of the Crystal Mine (ECF #65-1):

> Risks to the aquatic and benthic community in USG Creek were evaluated using multiple lines of evidence. Concentrations of aluminum, cadmium, copper, lead, and zinc detected in surface water collected from USG Creek exceeded levels protective of aquatic organisms with the greatest exceedances occurring for cadmium, copper, and zinc immediately down gradient from the confluence with the adit discharge. Sediment concentrations of antimony, arsenic, cadmium, lead, manganese, and silver exceed published probable effects benchmarks for benthic macroinvertebrates with the greatest exceedances occurring for arsenic. Historical in situ fish toxicity testing and macroinvertebrate community surveys support the conclusion that water quality is currently unsuitable for survival.

> On the basis of the nature and extent of contamination, land and water uses, and site-specific risk assessment, the RI findings support the conclusion that an unacceptable level of risk exists to human and ecological receptors from mining- related wastes at the Site. Multiple investigators (USGS, Montana Bureau of Mines and Geology [MBMG], and Montana Department of Environmental Quality [MDEQ]) consider the AMD from this mine to be the most significant contribution to water quality degradation in USG Creek and the entire Cataract Creek Watershed. In its current condition, the Site presents a constant threat to the environment leading EPA to prioritize it for a response action.

(*See* 2 page Executive Summary of ECF No. 65-1, attached)

The government's suggestion that defendant's depositing of dredge and fill material "contaminated" this watershed is untenable given these documented EPA findings showing that the principle source of water pollution in Catract Creek is the Crystal Mine.  Numerous streams within this watershed do not achieve beneficial use due to impacts from abandoned mines.  According to the report (ECF No. 65-1) acquatic life and fisheries are impaired and recreation and drinking water have been impacted.  Moreover, there is a significant risk to human health and the environment in close proximity to the many sites within the watershed.

Furthermore, just to make the point clear, the government is confusing "restoring the tributary, adjacent wetlands and stream crossing" (Government's Sentencing Memorandum at page 10) with its obligation to prove jurisdiction.  If the alleged channel in question <u>does</u> <u>not</u> constitute "waters of the United States" it is an isolated area not subject to this Court's jurisdiction.  Considering the lack of clarity in the law, together with the fact that the government's proof wholly failed to show

that defendant's digging of the ponds had a signifcant impact on downstream waters and/or environments, should inspire caution when it comes to consideration of these Guidelines enhancements.

Insofar as the remainder of the government's sentencing memorandum is concerned it is an impassioned effort to characterize defendant as one deserving of a prison sentence for obstructing justice and other alleged ostreperous behavior. Defendant has the right to defend himself and to free speech (*see* United States Constitution Amendments 1, 5 and 6). Defendant was under no obligation to refrain from discussing his case with the press or sharing his views about it with other like minded individuals. To prohibit such discourse by statute or court order would no doubt be considered prohibited prior restraints of speech. *See e.g. Nebraska Press Association v. Stuart,* 427 U.S. 539, 556-562 (1976). So too, punishing defendant *post hoc* for exercise of his right to free speech under the 1st and 5th Amendments would be unconstitutional. Nor do defendant's activities as described in the Government's Sentencing Memorandum fall within any relevant factor set forth in 18 U.S.C. §3553(a). *Also see United States v. Scarfo,* 263 F.3d 80, 94-5 (3rd Cir. 2001) (defense counsel's informing public of important legal issues did not pose a threat to trial or jury pool). What does nor does not constitute "waters of the United States" is a relevant and often debated controversial topic of discussion in the courts, the press and the court of public opinion.

### III.  CONCLUSION

WHEREFORE, the Court should reject the government's arguments for an increased Guidelines range and to punish defendant exercising his constitutional rights.

Respectfully Submitted July 14, 2016.

     /s/ Michael Donahoe
MICHAEL DONAHOE
Senior Litigator
Attorney for Defendant

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on July 14, 2016, a copy of the foregoing document was served on the following persons by the following means:

    1      CM-ECF

    2      E-Mail

1.  CLERK, UNITED STATES DISTRICT COURT

1.  Bryan Whittaker
    Assistant U.S. Attorney
    901 Front Street, Suite 1100
    Helena, MT 59626
    Counsel for the United States of America

2   Tucker Hood
    U.S. Probation Officer
    201 East Broadway, lower level
    Missoula, MT 59802

                                              /s/ Michael Donahoe
                                              MICHAEL DONAHOE
                                              Senior Litigator
                                              Counsel for Defendant